The HUFF ENERGY FUND, L.P.; WRH Energy Partners, L.L.C.; William R. "Bill" Huff; Rick D'Angelo; Ed Dartley; Bryan Bloom; and Riley–Huff Energy Group, LLC; Appellants

v.

LONGVIEW ENERGY COMPANY, Appellee.

No. 04–12–00630–CV.

Court of Appeals of Texas, San Antonio.

Feb. 12, 2014.

Dean V. Fleming, Michael W. O'Donnell, Fulbright & Jaworski L.L.P., Jeffrey Webb, Sharon E. Callaway, Crofts & Callaway, P.C., Ricardo R. Reyna, Brock Person Guerra Reyna, P.C., San Antonio, TX, Thomas R. Phillips, Matthew C. Wood, Baker Botts, L.L.P., Pamela Stanton Baron, Attorney at Law, Austin, TX, Daryl L. Moore, Daryl L. Moore, P.C., Houston, TX, for Appellants.

Mikal C. Watts, Francisco Guerra IV, Edward W. Allred, Watts Guerra & Craft, L.L.P., Brian P. Berryman, Watts Law Firm, L.L.P., San Antonio, TX, Craig B. Florence, Stacy R. Obenhaus, Rachel Kingrey, Randy D. Gordon, Gardere, Wynne, Sewell, L.L.P., Dallas, TX, Claudio Heredia, Rolando M. Jasso, Knickerbrocker, Heredia, Jasso & Stewart, P.C., Eagle Pass, TX, for Appellee.

Sitting: SANDEE BRYAN MARION, Justice, MARIALYN BARNARD, Justice, REBECA C. MARTINEZ, Justice.

## OPINION

SANDEE BRYAN MARION, Justice.

■ In this opinion, we address appellants' complaints regarding the amount of a court-ordered supersedeas bond and court-ordered discovery.[1] We consider first whether the statutory cap on a supersedeas bond contained in Texas Civil Practice and Remedies Code section 52.006 applies per judgment or per judgment debtor. The trial court in this case determined the cap applied per judgment debtor. Appellants argue the cap applies per judgment. We also consider whether the trial court erred in ordering ongoing discovery "for the duration of the appeal." Appellants assert post-judgment discovery is not permitted under Texas Rule of Civil Procedure 621a.

## PROCEDURAL BACKGROUND

Appellants, The Huff Energy Fund, L.P. ("Huff Energy"); WRH Energy Partners, LLC; William Huff; Rick D'Angelo; and Riley–Huff Energy Group, LLC ("Riley–

---

1. In ruling on a motion under Texas Rule of Appellate Procedure 24.4, this court may require that the security amount set by the trial court be increased or decreased. *See* Tex. R. App. P. 24.4(d).

Huff") (collectively, "appellants") are the judgment-debtors below. In the underlying judgment that is the subject of this pending appeal, the trial court granted a constructive trust over all right, title, and interest of Riley–Huff in and to certain assets, and ordered that appellee, Longview Energy Company ("Longview"), recover "from the [appellants], jointly and severally, [certain] production revenues . . . and an additional $95,500,000.00." Appellants jointly posted a supersedeas bond in the amount of $25 million ("the joint bond"). The trial court subsequently ordered appellants to increase the security as follows: "[T]o the extent [appellants] wish to stay the judgment's enforcement pending appeal, The Huff Energy Fund, L.P., WRH Energy Partners, LLC, William Huff, and Rick D'Angelo are each ORDERED to post security in the amount of $25 million or 50% of the [appellant's] current net worth, whichever is less . . . ." The trial court also ordered Huff Energy to produce certain documents during the pendency of the appeal.

In addition to their joint notice of appeal from the underlying judgment, appellants also filed a motion pursuant to Texas Rule of Appellate Procedure 24.4 seeking review of (1) the trial court's June 25, 2013 "Order Granting Longview's Motion to Increase Security" that requires four of the five appellants "to [each] post security in the amount of $25 million or 50% of the [appellant's] current net worth, whichever is less, within 20 days of the date of this order" and (2) the trial court's June 25, 2013 order directing Huff Energy to produce or cause to be produced a variety of documents "pertaining to all wells and leases within the constructive trust in which Riley–Huff or The Huff Energy Fund, L.P. holds an interest . . . on a monthly basis for the duration of the appeal."

## SUPERSEDEAS BOND

■ The alleged excessiveness of the amount of security, as determined by the trial court, is reviewed under Rule 24.4 using an abuse-of-discretion standard. *See Ramco Oil & Gas Ltd. v. Anglo Dutch (Tenge) L.L.C.,* 171 S.W.3d 905, 909 (Tex. App.-Houston [14th Dist.] 2005, published order); *TransAmerican Natural Gas Corp. v. Finkelstein,* 905 S.W.2d 412, 414 (Tex.App.-San Antonio 1995, pet. dism'd). Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreasonably. *Ramco,* 171 S.W.3d at 910. But, a trial court has no discretion in determining what the law is and applying the law to the facts. *Id.* Accordingly, the trial court's interpretation of applicable statutes is reviewed *de novo. Id.* at 912. A failure by the trial court to analyze or apply the law correctly is an abuse of discretion. *Id.* at 910.

### A. Compensatory Damages

■ Appellants contend this case does not involve compensatory damages because Longview sought recovery based on disgorgement, which is not compensatory in nature. Therefore, appellants first assert the trial court erred in requiring four of the appellants to each post additional security because the $25 million joint bond is sufficient to supersede the entire "non-compensatory" judgment award.

The Texas Civil Practice and Remedies Code provides that, subject to a statutory cap, "when a judgment is for money, the amount of security must equal the sum of: (1) *the amount of compensatory damages* awarded in the judgment; (2) interest for the estimated duration of the appeal; and (3) costs awarded in the judgment." TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(a) (West 2008) (emphasis added). Chapter

52 does not define "compensatory damages," however, the Texas Supreme Court has recently considered the definition of "compensatory damages" in the context of an award of attorney's fees. *See In re Nalle Plastics Family Ltd. Partnership,* 406 S.W.3d 168 (Tex.2013). The *Nalle* Court first noted that "Chapter 52 does not define 'compensatory damages.'" *Id.* at 171. The Court then referred to Black's Law Dictionary's definition of the term as "damages sufficient in amount to indemnify the injured person for the loss suffered." *Id.* (citing BLACK'S LAW DICTIONARY 445 (9th ed. 2009)). "The dictionary notes that the phrase is interchangeable with 'actual damages,' defined as '[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses.'" *Id.* at 171–72.

The Court also referred to Civil Practice and Remedies Code Chapter 41, which defines "compensatory damages [as] economic and noneconomic damages," but not exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.001(8). "Economic damages" are those "intended to compensate a claimant for actual economic or pecuniary loss." *Id.* § 41.001(4). "Noneconomic damages" are "damages awarded for the purpose of compensating a claimant for ... nonpecuniary losses of any kind other than exemplary damages." *Id.* § 41.001(12). "Exemplary damages" are "any damages awarded as a penalty or by way of punishment but not for compensatory purposes." *Id.* § 41.001(5). Although the *Nalle* Court did not decide whether Chapter 41's "compensatory damages" definition explicitly governed, the Court concluded that, "[a]t the very least, it is consistent with our own conclusion based on the phrase's ordinary meaning and our precedent—that attorney's fees incurred in the prosecution or defense of a claim are not compensatory damages." *Nalle,* 406 S.W.3d at 174.

Like the Court in *Nalle,* we need not decide whether Chapter 41's definition of "compensatory damages" explicitly governs because a plain reading of this judgment supports the conclusion that the $95,500,000.00 is compensatory in nature. The trial court rendered its judgment "based on the verdict, the evidence at trial, and the pleadings, and arguments of the parties." In its petition, Longview sought "a constructive trust over all the subject leases in [appellants'] possession or on any assets that the [appellants] obtained by virtue of the usurpation [of corporate opportunity]," punitive damages, and title to stolen leases, "but if it is unable to recover title for any reason ... [recovery of] the value of the stolen leases."

The jury answered affirmatively to each question inquiring whether one or more of appellants failed to comply with his or her fiduciary duty and whether one or more of appellants wrongfully obtained assets in the Eagle Ford shale as a result of this failure. Based on these affirmative answers, the jury determined the (1) market value of the Eagle Ford shale assets that Riley–Huff acquired as a result of the failure to comply with a fiduciary duty, (2) what Riley–Huff paid for the Eagle Ford shale assets it acquired, (3) the amount of past production revenues Riley–Huff derived from these assets, and (4) what Riley–Huff paid to develop these assets. In addition to the constructive trust, the trial court awarded Longview recovery "from the [appellants], jointly and severally, [certain] production revenues ... and an additional $95,500,000.00." Nothing in the judgment indicates the award of $95,500,000.00 is punitive in nature. *See Tex. Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.,* 344 S.W.3d 628, 629 (Tex.App.-Houston [14th Dist.] 2011, published order) (noting that in a prior order

"this Court granted appellant's first motion and reversed the trial court's initial determination of security, as it was improperly calculated upon damages that are, *by order of the trial court,* punitive in nature.") (emphasis added). Any attempt to go behind the trial court's judgment would be speculative. When, as here, "a judgment is unambiguous with no room for interpretation, it is our duty to declare its effect in light of the literal language used." *Harper v. Welchem, Inc.,* 799 S.W.2d 492, 495 (Tex.App.-Houston [14th Dist.] 1990, no writ). Accordingly, in light of the language used in this judgment our conclusion that the $95,500,000.00 constitutes "compensatory damages" is consistent with the ordinary meaning of that phrase.

## B. Maximum Amount of Security

Appellants next assert the trial court erred in requiring four of the appellants to each post additional security because $25 million is the maximum amount of security required by law, and the $25 million cap applies per judgment, and not per judgment-debtor.

▆▆▆ Section 52.006 also provides that "[n]otwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of: (1) 50 percent of the judgment debtor's net worth; or (2) $25 million." Tex. Civ. Prac. & Rem.Code § 52.006(b). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. Tex. Gov't Code Ann. § 312.005 (West 2013); *TGS–NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex.2011). To discern that intent, we begin with the statute's words. Tex. Gov't Code § 312.002; *see TGS–NOPEC,* 340 S.W.3d at 439. We consider the statute as a whole rather than focusing upon individual provisions. *TGS–NOPEC,* 340 S.W.3d at 439. If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage. *Id.* Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning. *Id.* Words and phrases shall be read in context and construed according to the rules of grammar and common usage, but words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly. Tex. Gov't Code § 311.011. We presume the legislature selected statutory words, phrases, and expressions deliberately and purposefully. *See Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex.2010). We also presume the Legislature was aware of the background law and acted with reference to it. *See Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990).

Although Chapter 52 refers to "judgment debtor" in the singular, the Legislature has instructed such number-specific references in codes are not dispositive. *See* Tex. Gov't Code §§ 311.012(b), 312.003(a) ("[t]he singular includes the plural and the plural includes the singular"). Therefore, we begin with the statutory definition of "security" in Chapter 52, which is "a bond or deposit posted, as provided by the Texas Rules of Appellate Procedure, by a judgment debtor to suspend execution of the judgment during appeal of the judgment." Tex. Civ. Prac. & Rem.Code § 52.001. Next, we turn to the statutory amount of security required to suspend a judgment, which is contained in section 52.006(a). When, as here, "a judgment is for money, the amount of security must equal the sum of: (1) the amount of compensatory damages awarded in the judgment; (2) interest for the estimated

duration of the appeal; and (3) costs awarded in the judgment." *Id.* § 52.006(a). Finally, we turn to the statutory calculation of the amount of security required to suspend a judgment, which is as follows: "Notwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of: (1) 50 percent of the judgment debtor's net worth; or (2) $25 million." *Id.* § 52.006(b).

We construe section 52.006 as linking the "security" to "the judgment." The general rule is that there can only be one final judgment in a case. TEX.R. CIV. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law."); *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 192 (Tex.2001).[2] Because the statute links the security that must be posted to a single judgment, we believe the cap on the amount of security that must be posted to suspend a single final judgment applies without regard to the number of judgment debtors. Therefore, we conclude that, under the plain language of the statute, the cap is applied per judgment and not per judgment debtor.[3]

We believe our conclusion is supported by the purpose of the Legislature's 2003 enactment of section 52.006, which " 'reflect[ed] a new balance between the judgment creditor's right in the judgment and the dissipation of the judgment debtor's assets during the appeal against the judgment debtor's right to meaningful and easier access to appellate review.' " *In re Nalle Plastics Family Ltd. Partnership*, 406 S.W.3d 168, 170 (Tex.2013) (quoting Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal after House Bill 4*, 46 S. TEX. L.REV. 1035, 1038 (2005)). Thus, the policy behind section 52.006 is two-fold.

"Historically ... the purpose of a supersedeas bond had been to protect the judgment creditor from incurring damages that result from delay in enforcing the judgment pending appeal." *Reshuffling the Deck*, 46 S. Tex. L.Rev. at 1083. The 2003 "amendments addressing security requirements reflected a policy shift away from a primary goal of protecting judgment creditors toward the goal of protecting judgment debtors' ability to appeal." *Shook v. Walden*, 304 S.W.3d 910, 918–19 (Tex.

**2.** Exceptions have been recognized for probate and receiver cases. *Lehmann*, 39 S.W.3d at 192 n. 1; *Lavender v. Lavender*, 291 S.W.3d 19, 21 (Tex.App.-Texarkana 2009, no pet.).

**3.** Longview relies on the use of the disjunctive word "or" to argue the singular "a judgment debtor" applies equally to both alternative methods of calculating the amount of the security. Longview also relies on the only appellate court to directly address the issue of whether the $25 million cap applies per judgment debtor. In a 2009 unpublished order, the Tyler Court of Appeals noted that "Chapter 52 pertains solely to the security that must be posted to supersede a money judgment [and] that there is 'not one single reference in Chapter 52 to judgment debtors in the plural.' " *O'Quinn v. Wood*, No. 12–08–00011–CV, 2009 WL 2367133, *5 (Tex.App.-Tyler June 10, 2009, order). "All references are to 'a judgment debtor' or 'the judgment debtor,' and we see nothing in Chapter 52 to indicate a legislative intent that these terms include the plural." *Id.* "Moreover, when determining the maximum amount of security, 'the judgment debtor's net worth' must be calculated per judgment debtor, rather than collectively." *Id.* (citing to *Ramco Oil*, 171 S.W.3d at 911–12 (holding trial court abuses its discretion if it sets amount of security based on net worth without calculating net worth for each jointly and severally liable judgment debtor)). "Thus, 'the judgment debtor' is singular in that context." *Id.* The court concluded "the statutory cap imposed by subsection 52.006(b) applies per judgment debtor instead of per judgment." *Id.* at *6. For the reasons stated in this opinion, we disagree with the *O'Quinn* court's conclusion.

App.-Austin 2010, no pet.). Instead of being required to provide security in the full amount of the judgment, interest, and costs (as judgment debtors seeking to appeal formerly were required to do), the judgment debtor may now more easily suspend enforcement of money judgments by posting security only on "compensatory damages," "interest for the duration of appeal," and "costs awarded in the judgment." *Reshuffling the Deck*, 46 S. Tex. L.Rev. at 1038. And, a trial court must reduce the amount of security if a judgment debtor shows it is likely to suffer substantial economic harm—a less onerous burden than the previous standard, which required a showing both of irreparable harm to the debtor and that a lesser amount would not substantially impair a judgment creditor's ability to recover under the judgment after appellate remedies were exhausted. *Nalle*, 406 S.W.3d at 170.

The rebalancing effort did not, however, wholly discard the original interest in protecting judgment-creditors from suffering the harms of unsecured and unpaid judgments. *Reshuffling the Deck*, 46 S. Tex. L.Rev. at 1038, 1084. The goal in setting a supersedeas bond is to require an amount that will adequately protect the judgment-creditor against any loss or damage occasioned by the appeal. *Whitmire v. Greenridge Apts.*, 333 S.W.3d 255, 262 (Tex.App.-Houston [1st Dist.] 2010, pet. dism'd).

We believe the "new balance" is struck by capping the amount of the security on a per judgment basis when a single judgment is rendered against multiple judgment debtors jointly and singly. If this amount is inadequate to protect the judgment creditor, then the trial court may "enjoin[ ] the judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the trial court may not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business." Tex. Civ. Prac. & Rem.Code § 52.006(e). A judgment creditor is further protected by Texas Rule of Appellate Procedure 24.1, which allows a trial court to "make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause" so long as the order is not in conflict with Chapter 52. Tex.R.App. P. 24.1(e); Tex. Civ. Prac. & Rem.Code § 52.005. On the other hand, if the amount of the security "is likely to [cause the judgment-debtor] substantial economic harm[,] ... the trial court shall lower the amount of the security to an amount that will not cause the judgment debtor substantial economic harm." *Id.* at § 52.006(c). And under either scenario, "[a]n appellate court may review the amount of security as allowed under Rule 24, Texas Rules of Appellate Procedure, except that when a judgment is for money, the appellate court may not modify the amount of security to exceed the amount allowed under this section." *Id.* § 52.006(d).

Because we conclude the amount of the security required to suspend a judgment pursuant section 52.006(b) applies per judgment and not per judgment debtor, the trial court erred in ordering appellants to increase the security as follows: "[T]o the extent [appellants] wish to stay the judgment's enforcement pending appeal, The Huff Energy Fund, L.P., WRH Energy Partners, LLC, William Huff, and Rick D'Angelo are each ORDERED to post security in the amount of $25 million or 50% of the [appellant's] current net worth, whichever is less ...."

## POST-JUDGMENT DISCOVERY

In its second issue, Riley-Huff contends the trial court's order granting

Longview's request for ongoing discovery "for the duration of the appeal" was an abuse of discretion.

Texas Rule of Civil Procedure 621a authorizes post-judgment discovery in two instances: (1) for the purpose of obtaining information to aid in the enforcement of a judgment so long as the judgment has not been suspended by a supersedeas bond, or (2) for the purpose of obtaining information relevant to motions allowed by Rule 24 of the Texas Rules of Appellate Procedure.[4] TEX.R. CIV. P. 621a. However, Texas Rule of Appellate Procedure 24.1(e) provides: "The trial court may make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause." TEX.R.APP. P. 24.1(e).

Longview filed a motion under Rule 24.1(e) requesting the court order Riley–Huff to provide Longview with certain information and documents on a periodic basis so that Longview could monitor the status of the constructive trust awarded to Longview in the final judgment. Longview argued that Rule 24.1(e) gave the trial court the discretion to enter any order to protect a judgment creditor, including a discovery order allowing Longview to "monitor" the constructive trust it was awarded. Riley–Huff, on the other hand, argues Rule of Civil Procedure 621a, rather than Rule of Appellate Procedure 24.1(e), governs post-judgment discovery and, because the trial court's order granting discovery does not address either of the two instances in which post-judgment discovery is allowed under Rule 621a, the trial court abused its discretion.

Here, the final judgment awarded to Longview both money ($95.5 million) and property in the form of a constructive trust over a large number of acres in the Eagle Ford shale. In its Rule 24.1(e) motion, Longview alleged the property assets controlled by Riley–Huff were rapidly depleting and expiring. Longview alleged that "the value of these depleting trust assets is unsecured," and, therefore, unless it is provided with information through a discovery order, it will have no way of knowing whether Longview's interest in the constructive trust was protected while the appeal was pending. At the hearing on the motion, Longview argued a "large quantity" of the leases that are the subject of the constructive trust had been let go or have dissipated. In support, Longview introduced multiple exhibits demonstrating the release of various oil and gas mineral leases and interests covering thousands of acres, some of which may be subject to the constructive trust.

To the extent the order does not conflict with Civil Practice and Remedies Code Chapter 52, Texas Rule of Appellate Procedure 24.1 specifically allows a trial court to "make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause." TEX.R.APP. P. 24(e); *see Miller v. Kennedy & Minshew, Prof'l Corp.*, 80 S.W.3d 161, 166 (Tex.App.-Fort Worth 2002, no pet.) (concluding supersedeas bond was insufficient to protect judgment creditors and, citing Rule 24.1(e), holding "the trial court is required to order the specific action it deems necessary to adequately protect the judgment creditor"). Longview presented evidence at the hear-

4. The language of Texas Rule of Civil Procedure 621a provides for information "for the purpose of obtaining information relevant to motions allowed by Texas Rules of Appellate Procedure 47 and 49," however, the Rule contains a footnote indicating those Rules

have since been merged into Texas Rule of Appellate Procedure 24. *See* TEX.R. CIV. P. 621a n. 2; *see also In re Emeritus Corp.*, 179 S.W.3d 112, 116 (Tex.App.-San Antonio 2005, orig. proceeding).

ing showing the potential for dissipation of the assets subject to the constructive trust it was awarded in the judgment. We, therefore, conclude the trial court did not abuse its discretion in ordering, pursuant to Rule 24.1(e), the periodic reporting to monitor and thus secure the trust assets during pendency of the appeal when, as here, evidence was presented demonstrating the assets controlled by the judgment debtors are at risk of expiring or being depleted. We also conclude the order does not conflict with Chapter 52.

## CONCLUSION

For the reasons stated above, we GRANT in part appellants' Rule 24.4 Motion as to the trial court's June 25, 2013 "Order Granting Longview's Motion to Increase Security" and we REVERSE the order requiring The Huff Energy Fund, L.P., WRH Energy Partners, LLC, William Huff, and Rick D'Angelo to each "post security in the amount of $25 million or 50% of the defendant's current net worth, whichever is less . . . ." We DENY in part appellants' Rule 24.4 Motion as to the trial court's June 25, 2013 order directing Huff Energy to produce or cause to be produced a variety of documents "pertaining to all wells and leases within the constructive trust in which Riley–Huff or The Huff Energy Fund, L.P. holds an interest . . . on a monthly basis for the duration of the appeal."

REBECA C. MARTINEZ, Justice. dissenting.

Because I believe the $25 million cap on a supersedeas bond contained in Civil Practice and Remedies Code section 52.006(b)(2) applies per judgment debtor, I respectfully dissent from that portion of the majority's opinion. Tex. Civ. Prac. & Rem.Code Ann. § 52.006(b)(2) (West 2008).

Here, the final judgment awarded to Longview Energy Company both money (certain production revenues plus $95.5 million) *and* property in the form of a constructive trust over leases and mineral interests covering a large number of acres in the Eagle Ford shale. Chapter 52 of the Civil Practice and Remedies Code provides for security posted by a judgment debtor to suspend execution of the judgment pending appeal. While I agree with the majority that Rule 24.1(e) authorizes the trial court to order "the periodic reporting to monitor the trust assets included in the *property* award during pendency of the appeal" (emphasis added), such authority is not an adequate alternative to sufficient security for the money judgment awarded to Longview. *See* Tex.R.App. P. 24.1(e).

On appeal, appellants argue that the Legislature's "unequivocal intent" in passing the 2003 enactments codified under Chapter 52 was to impose a $25 million per judgment cap on the security required on appeal, which reflects a policy determination that a $25 million bond or deposit is sufficient security to cover the vast majority of judgments entered in Texas. Appellants argue that it would be "absurd" to construe section 52.006(b)(2) other than as a per judgment cap, particularly when read in the context of these enactments following the *Texaco v. Pennzoil* opinion, and in light of the $25 million per judgment cap imposed in seven other states.[1]

1. Appellants' brief cites the following state statutes: Ark.Code Ann. § 16.55–214(a) (maximum appeal bond required in any civil action under any legal theory limited to $25 million *regardless of the amount of the judgment*); Colo.Rev.Stat. Ann. § 13–16–125(1) (total amount of the supersedeas bonds that are required *collectively* of all appellants during the appeal of a civil action may not exceed twenty-five million dollars *in the aggregate,* regardless of the amount of the judgment that is appealed); Ga.Code Ann. § 5–6–46(b) (the

Why, appellants argue, would the legislature, after enacting sweeping tort reform legislation, leave the trial court with the same "unlimited discretion to impose unlimited bonds where there are multiple judgment debtors" as it had in *Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). "The sky is the limit," they argue.

The legislative intent to impose a cap under Chapter 52 to aid the judgment debtor's right to meaningful and easier access to appellate review is clear, but I disagree with appellants that "all roads lead to the same conclusion." Both proponents and opponents of House Bill 4 brought forth concerns addressing the high cost of an appeal bond as well as a judgment creditor's ability to recover the full amount of damages if the defendant defaulted on the bond. Section 52.006 satisfies the competing interests by *limiting* the supersedeas bond required for a money judgment to compensatory damages, interest for the duration of the appeal, and costs awarded in the judgment and, further, by *imposing a cap* on the required security amount of the lesser of 50% of the judgment debtor's net worth or $25 million. Tex. Civ. Prac. & Rem.Code Ann. § 52.006 (West 2008). Again, I believe section 52.006, the product of this legislative "balancing," is clearly and unambiguously read in context to apply per

judgment debtor. If read to apply per judgment, the effect of section 52.006(b)(2) would be to undermine the directives under the appellate rules which pertain to each respective appellant, ignore the section's limited applicability, and undermine the trial court's discretion to consider the intended relief permitted to a judgment debtor under the very same section. Net worth and economic harm become completely inapposite.

Appellants also fail to recognize that the amendments to Chapter 52 and Rule 24 eased the burden on a judgment debtor seeking to suspend enforcement of a judgment during appeal and, likewise, restricted the trial court's discretion and subsequent appellate review to an amount not exceeding that allowed under section 52.006. Added in 2003, section 52.006 lowered the security required "when a judgment is for money," not for all civil judgments pending appeal, and was specifically intended to exclude the need to supersede punitive damages. The Legislature provided relief to a judgment debtor against possible insolvency or cost-prohibitive expense of an appeal bond caused by a large punitive damages award; a judgment debtor now need only post an appeal bond equal to the sum of the amount of compensatory damages awarded in the judgment, decreased interest for the estimated duration of the appeal, and costs awarded in the judgment—subject to the statutory

total supersedeas bond or other form of security that is required of all appellants *collectively* shall not exceed $25 million regardless of the value of the judgment); Mich. Comp. Laws Ann. § 600.2607(1) (the bond shall not exceed $25,000,000.00 regardless of the amount of the judgment); N.D.Code § 28-21-25 (the total supersedeas bond that is *required of all appellants* may not exceed $25 million irrespective of the amount of the judgment); S.D. Codified Law § 15-26A-26 (the amount of the bond required *collectively* of all appellants may not exceed twenty-five million dollars regardless of the amount of judgment); Tenn.Code Ann. § 27-1-124(a) (the amount of the appeal bond necessary to stay execution during the course of all appeals or discretionary reviews *of that judgment* by any appellate court shall not exceed the lesser of twenty-five million dollars ($25,000,000) or one hundred twenty-five percent (125%) of the judgment amount); Va.Code Ann. § 8.01-676.1(J) (the total appeal bond or irrevocable letter of credit that is required of an *appellant and all of its affiliates* shall not exceed $25 million, regardless of the value of the judgment).

cap. *Id.* § 52.006(a), (b); *see* Tex. Fin. Code Ann. § 304.003 (West 2006) (the 2003 Legislature also lowered prejudgment and post-judgment interest rates to the current ceiling tied to the prime rate). The trial court's discretion to determine the amount of security was preserved, yet limited, by a ceiling or "cap," the lesser of twenty-five million dollars *or* fifty percent of the judgment debtor's net worth. The cap is clearly determined by a single judgment debtor's net worth, not by the value of the judgment or judgment debtors "collectively" or "in the aggregate," and the amount may still be further reduced by a showing of substantial economic harm. Tex. Civ. Prac. & Rem.Code Ann. § 52.006(c); Tex. R.App. P. 24.2(b) (amount lowered if trial court finds posting security is likely to cause *the judgment debtor* substantial harm; applicable to *all* judgments) (emphasis added). Concurrently, an appellate court cannot modify the amount of security required of a judgment debtor to exceed the amount allowed under said limitations and cap. *Id.* § 52.006(d); Tex.R.App. P. 24.2 (amended in 2003 to coincide with section 52.006). Nowhere in Chapter 52 is there explicit language imposing a cap on the amount of security required with reference to the value of the judgment or the number of judgment debtors, notwithstanding the legislature's use of "collectively" and "in the aggregate" elsewhere.

While the majority recognizes that Chapter 52 refers to "judgment debtor" in the singular [2], its construction linking "security" with "the judgment" disregards the plain and explicit language used in the sole definition provided within Chapter 52. The majority acknowledges that proper construction of a statute requires consideration of the whole statute and not merely its individual provisions, that we apply a precise definition apparent from the term's use in the context of the statute, and that words and phrases shall be read in the context of the statute, yet it simply ignores the Legislature's discernable intent to define "security," *as used "[i]n this chapter,"* to mean "a bond or deposit posted, as provided by the Texas Rules of Appellate Procedure, *by a judgment debtor* to suspend execution of the judgment during appeal of the judgment." Tex. Civ. Prac. & Rem.Code Ann. § 52.001 (West 2008) (emphasis added). The Legislature assigned a particular meaning to the term "security," which notably has been unedited since 1989, and we must presume it had the definition in mind when structuring the language of section 52.006, its use of security therein with reference back to its definition.

Harmonious with the clear language of the statute, the Legislature's intent to lessen the burden on a judgment debtor seeking security is achieved by restricting the amount of security calculated by reference to the nature of the judgment (recovery for money) *at the very least* per section 52.006(a), and by reference to the judgment debtor's net worth (clearly used singularly) *at most* per section 52.006(b). The weight is further reduced by considering economic harm to "the judgment debtor" under sections 52.006(c) and (e), and is

---

**2.** Rule 24, also amended in 2003, determined the amount of security required to stay enforcement of a judgment pending appeal, depending on whether the award is money or property. *Compare* Tex.R.App. P. 24.2(a)(1) ("For recovery of money") *with* 24.2(a)(2) ("For recovery of property"). The procedure for allowing security in a lesser amount upon a showing of substantial economic harm un-

der 24.2(b), as well as section 52.006(c), is made applicable to *all* judgments, and "the judgment debtor" as used therein is necessarily read singularly, as it must consistently be read under both Rule 24 and Chapter 52, respectively. Appellants, it would seem, construe "the judgment debtor" singularly in one subsection, but plural in a parallel subsection, under both Chapter 52 and Rule 24.

applicable to *all* judgments, regardless of the nature of recovery. *Id.* § 52.006(c), (e). The majority's construction of the words "the judgment" as linked to the term "security" necessarily disregards the term's definition and challenges the clearly restricted applicability of section 52.006, i.e., when a judgment is for money. We must presume that the Legislature purposefully refused to incorporate the same or similar explicit language used by other states adopting a $25 million per judgment cap, and that it would certainly have had reference to that language. If a per judgment cap was intended, the Legislature would have made other uniform statutory amendments to the Civil Practice and Remedies Code, the Appellate Rules, particularly Rule 24, and other codifications accordingly.

By a plain reading of the statutory definition of the term "security," I cannot agree with the majority to construe section 52.006 in context to measure or cap the amount of security with reference only to the value of "the judgment," disregarding "security" as it is statutorily defined. As a means to an end, the majority concludes that the "policy shift" behind section 52.006 favoring judgment debtors, together with the one-judgment rule, supports the conclusion that the $25 million cap under section 52.006(b)(2) is per judgment and not per judgment debtor. The majority agrees with appellants' argument to read the statute in furtherance of the perceived policy shift substantially favoring judgment debtors, and yet goes further by proposing that a per judgment cap achieves a "new balance" that still preserves the original interest in protecting judgment creditors "when a single judgment is rendered against multiple judgment debtors jointly and severally." Not to "wholly discard" the judgment creditor, the majority points to the trial court's injunctive authority available to prevent

dissipation or transfer of assets under section 52.006(e) as weighing in favor of judgment creditors. *Id.* § 52.006(e).

To do so, however, would ignore the fact that only section 52.006(e) applies without restriction to money judgments and whether or not supersedeas or other appellate security is posted on appeal, and provides the judgment debtor added relief against any interference with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business. *Id.* Consequently, I fail to see how a more restricted injunctive remedy, which is irrelevant to security and further constrains the trial court's authority under Tex.R.App. P. 24.1(e) (trial court may make any order necessary to adequately protect judgment creditor against loss or damage that appeal might cause), affords any weight against a per judgment cap. If read unequivocally to mean "per judgment," the $25 million cap under section 52.006(b)(2) becomes less a means to afford appellate access and more of an unintended inequitable retreat from the original purpose of a supersedeas bond.

I also part from the majority on its disagreement with the Tyler Court of Appeals, which correctly held that the $25 million cap imposed by subsection 52.006(b) applies per judgment debtor instead of per judgment. *See O'Quinn v. Wood,* No. 12–08–00011–CV, 2009 WL 2367133, at *6 (Tex.App.-Tyler June 10, 2009, order). The majority relies heavily on Professor Carlson's writing yet disagrees with her and the court, which reached this conclusion after analyzing legislative intent under the general rules of statutory construction. *Id.* The Tyler court noted that, "a statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it" and "[i]t is also presumed, when examining amendments to

existing legislation, that the legislature was aware of case law affecting or relating to the statute." *Id.* at *7; *see also Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990) (same). The Tyler court further concluded that, "[b]ecause the legislature, with presumed knowledge of the holding in *Fortune,* imposed the $25,000,000.00 cap 'notwithstanding any other law,' ... joint bonds are not excepted from the cap." *Id.* (citing *Fortune v. McElhenney,* 645 S.W.2d 934, 935 (Tex. App.-Austin 1983, no writ)). Finally, the court noted that, "[u]nder the holding in *Fortune,* when a joint bond is in the amount of the judgment, the surety must be liable for the entire amount if the judgment is affirmed with respect to any appellant ... But [under section 52.006(b)(2) ] the amount required per judgment debtor cannot exceed $25,000,000.00." *Id.*

By construing section 52.006(b)(2) to cap the amount of security on a per judgment basis, even where the security is less than adequate to protect the judgment creditor's award of non-punitive damages against multiple judgment debtors, the majority's construction of the statute heeds no clear legislative intent and succeeds only in usurping the trial court's discretion intentionally preserved to best weigh the adequacy of protection for the judgment creditor against any loss or damage during appeal while simultaneously improving access to appeal and protecting the judgment debtor from substantial economic harm. Nothing in the Legislature's course of amending Chapter 52 or Appellate Rule 24 since 1989 can suggest this construction. Should the Texas Legislature choose to join other states in adopting a per judgment cap, it may further amend the current statutes to so state. Until then, I decline to so construe our current statutory scheme.

For the foregoing reasons, I would conclude that the $25 million cap currently found in section 52.006(b)(2) applies per judgment debtor, and that the trial court's order requiring all appellants except Huff Energy to post an additional bond was not an abuse of discretion. Importantly, any judgment debtor may make a showing before the trial court under section 52.006(c) to lower the amount of security. Because I agree with the majority's conclusion regarding the trial court's order granting post-judgment discovery, I would deny appellants' Rule 24.4 Motion on all grounds.