**Order issued August 19, 2014**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-13-00853-CV

—————————————

## DERNICK RESOURCES, INC., Appellant

## V.

## DAVID WILSTEIN AND LEONARD WILSTEIN, INDIVIDUALLY AND AS TRUSTEE OF THE LEONARD AND JOYCE WILSTEIN REVOCABLE TRUST, Appellees

---

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2002-31310

---

### OPINION ON ORDER

Judgment creditors, David and Leonard Wilstein ("the Wilsteins"), have filed in this Court an "Emergency Motion to Increase Amount of Deposit in Lieu of Supersedeas Bond," challenging the trial court's order setting the amount of the

deposit filed by judgment debtor,[1] Dernick Resources, Inc. ("Dernick"). We conclude that the trial court did not abuse its discretion and deny the motion.

## BACKGROUND

The Wilsteins sued Dernick for breach of contract, breach of fiduciary duties, fraud, and conversion related to the Wilsteins' investment in two different oil and gas leases—the Bradshaw Joint Venture and the McCourt Field Joint Venture. The charge eventually submitted to a jury asked, in relevant part,

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the Wilstein Brothers for their damages, if any, that were proximately caused by Dernick's breach of fiduciary duty in failing to notify the Wilstein Brothers about acquisition of leasehold interests in Greeley County, Kansas, and in failing to account to the Wilstein Brothers for their share of the assets of the Bradshaw Joint Venture?

The jury found that the Wilsteins' share of the sales proceeds of the Bradshaw Joint Venture was $162,194.14.

The trial court also held a bench trial and heard evidence and arguments of counsel on the issue of the Wilsteins' request for equitable fee forfeiture from Dernick regarding fees Dernick received as the operator of the McCourt Field. Following this bench trial, the trial court found that "Dernick's conduct constituted a clear and serious breach of fiduciary duty" and concluded that the Wilsteins "should recover $1,709,421.05 from [Dernick] for equitable fee forfeiture as a

---

[1]     *See* TEX. R. APP. P. 24.4.

2

result of Dernick's clear and serious breach of fiduciary duties under the McCourt Field Joint Venture and Joint Operating Agreement." The trial court made various findings of fact to support this conclusion, including findings regarding the specific amounts of fees that the Wilsteins had paid and findings that, "[w]ithout Dernick's breach of fiduciary duties concerning the McCourt Field Joint Venture Agreement and Joint Operating Agreement, Dernick would not have been entitled to receive any of the fees at issue"; that "Dernick received benefits that the Wilstein Brothers did not receive, namely fees, which the Wilstein Brothers were required to pay Dernick or its alter ego [and subsidiary, Pathex Petroleum, Inc.]"; and that, "[b]ecause Dernick's right to charge and collect certain fees from the Wilstein Brothers arose by virtue of Dernick's breach of fiduciary duty, equity dictates that Dernick may not retain such benefits."

In its final judgment, the trial court awarded the Wilsteins $162,194.14, plus 5% prejudgment interest, as damages "accounting for [their] share of the Bradshaw Joint Venture" that the jury concluded was owed to them by Dernick. The trial court also awarded the Wilsteins $727,324.82 in attorney's fees incurred through the trial. Finally, the trial court ordered that the Wilsteins recover $1,709,421.06 in "equitable fee forfeiture," plus 5% prejudgment interest, based on its findings and conclusions following the bench trial.

3

Dernick posted a cash deposit in the amount of $583,427.08 in lieu of a supersedeas bond. *See* TEX. R. APP. P. 24.1(a)(3) (permitting judgment debtor to suspend enforcement of judgment by "making a deposit with the trial court clerk in lieu of a bond"). The cash deposit accounted for the compensatory damages on the Bradshaw Joint Venture claims found by the jury and the prejudgment interest on that award, for two years' worth of accrued appellate post-judgment interest on the judgment, and for costs assessed in the judgment against Dernick. The Wilsteins moved the trial court to increase the amount of the deposit to include the $1.7 million fee forfeiture award against Dernick for the breach of its fiduciary duty. The trial court denied the motion.

## Amount of Deposit

### A.    Standard of Review

On the motion of a party, an appellate court may review the sufficiency or excessiveness of the amount of bond or other security set by a trial court to secure payment of a money judgment during the pendency of an appeal in a civil case. TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(d) (Vernon 2008); TEX. R. APP. P. 24.4(a). We review the trial court's determination of the amount of security under an abuse of discretion standard. *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 909 (Tex. App—Houston [14th Dist.] 2005, published order). "Generally, the test for abuse of discretion is whether the trial court acted

4

without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreasonably." *Id.* at 910; *see McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex. 1995). A failure by the trial court to analyze or apply the law correctly is an abuse of discretion. *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623–24 (Tex. 2005); *Ramco Oil & Gas*, 171 S.W.3d at 910.

**B.  Categorization of the Equitable Fee Forfeiture Award**

Here, the parties dispute whether the trial court, in calculating the amount of the deposit required in lieu of a supersedeas bond, was required to include in its sum the $1.7 million fee forfeiture award. The Wilsteins argue that the fee forfeiture award is properly characterized as compensatory damages that must be included in calculating the amount required to supersede the judgment.

*1.  The law regarding security sufficient to supersede the judgment*

When a judgment is for recovery of money, the proper amount of the bond, deposit, or security must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. TEX. R. APP. P. 24.2(a)(1); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a). The amount of security required to supersede the judgment is subject to a statutory cap—it must not exceed the lesser of fifty percent of the judgment debtor's net worth or $25 million. TEX. R. APP. P. 24.2(a)(1); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(b). These provisions were created as part of a

comprehensive tort reform measure, amending the previous scheme that required a party to post security covering the entire judgment, regardless of amount. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 169–70 (Tex. 2013).

Although Civil Practice and Remedies Code chapter 52 does not define "compensatory damages," the supreme court has cited Black's Law Dictionary when determining whether attorney's fees should be considered compensatory damages. *Id.* at 171–72. According to Black's Law Dictionary, "compensatory damages" means "damages sufficient in amount to indemnify the injured person for the loss suffered." *Id.* at 171 (citing BLACK'S LAW DICTIONARY 445 (9th ed. 2009)). "The dictionary notes that the phrase is interchangeable with 'actual damages,' defined as '[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses.'" *Id.* at 171–72.

The supreme court has also observed that, "[w]hile chapter 52 does not define 'compensatory damages,' chapter 41 does." *Id.* at 174. That term, as defined in Civil Practice and Remedies Code chapter 41, includes "economic and noneconomic damages" and "does not include exemplary damages." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(8) (Vernon 2008)). Under chapter 41, "economic damages" are those "intended to compensate a claimant for actual economic or pecuniary loss," and "noneconomic damages" are "damages awarded for the purpose of compensating a claimant for . . . nonpecuniary losses of any kind

6

other than exemplary damages." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(4), (12)). Chapter 41 defines "exemplary damages" as "any damages awarded as a penalty or by way of punishment but not for compensatory purposes." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5)).

Although the supreme court noted that courts of appeals, including this one,[2] have held that chapter 41's definition of compensatory damages does not apply in the context of chapter 52, it also observed that the current version of the supersedeas requirements and the enactment of chapter 41's compensatory damages definition were made as part of the same bill, "reflecting an intent that the same definition apply to both provisions." *Id.* The supreme court stated, "We need not conclude that chapter 41's 'compensatory damages' definition explicitly governs here. At the very least, it is consistent with our own conclusion based on the phrase's ordinary meaning and our precedent—that attorney's fees incurred in the prosecution or defense of a claim are not compensatory damages." *Id.* The supreme court also stated, "While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make a claimant whole, they are

---

[2] *See Fairways Offshore Exploration, Inc. v. Patterson Servs., Inc.*, 355 S.W.3d 296, 302 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that "the definitions employed in Chapter 41 are expressly prescribed to apply to that chapter only" in concluding that attorney's fees constitute compensatory damages for purposes of chapter 52), overruled in part, *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 174–75 (Tex. 2013) (concluding, in context of chapter 52, that attorney's fees incurred in prosecution or defense of claim are not compensatory damages).

7

not, and have never been, damages. Not every amount, even if compensatory, can be considered damages." *Id.* at 173. However, the supreme court rejected "the idea that attorney's fees can *never* be considered compensatory damages" and held that fees comprising the breach-of-contract damages in the underlying suit in *In re Nalle Plastics* were compensatory damages. *Id.* at 174–75.

### 2. *The law regarding the nature of equitable fee forfeiture*

Here, the trial court characterized the $1.7 million fee forfeiture award as an "equitable fee forfeiture" in its judgment. Thus, we must determine whether this equitable award constituted compensatory damages for the purposes of Civil Practice and Remedies Code chapter 52.

Courts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of a fiduciary duty. *ERI Consulting Eng'rs, Inc. v. Swinnea,* 381 S.W.3d 867, 873 (Tex. 2010); *see also Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999) ("[A]s a rule a person who renders service to another in a relationship of trust may be denied compensation for his service if he breaches that trust."). Equitable forfeiture is distinguishable from an award of actual damages incurred as a result of a breach of fiduciary duty. *Burrow*, 997 S.W.2d at 240 (discussing purposes of equitable fee forfeiture and holding that claimant need not prove actual damages to succeed in claim for fee forfeiture because "[i]t is the agent's disloyalty, not any resulting harm, that violates the fiduciary duty");

8

*Hoover v. Larkin*, 196 S.W.3d 227, 233 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("[C]ourts distinguish between actual damages incurred as a result of the breach, and the equitable remedy of fee forfeiture."); *see also Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009) (holding, in context of legal malpractice suit, "A negligence claim, unlike a fee forfeiture claim for breach of fiduciary duty, is about compensating an injured party").

The main purpose of forfeiture is not to compensate the injured principal, even though it may have that effect; rather, "the central purpose of the equitable remedy of forfeiture is to protect relationships of trust by discouraging agents' disloyalty." *Burrow*, 997 S.W.2d at 238; *Hoover*, 196 S.W.3d at 233; *see also Swinnea*, 318 S.W.3d at 872–73 (discussing equitable remedies for breach of fiduciary duty and stating, "We later reiterated that a fiduciary may be punished for breaching his duty: 'The main purpose of forfeiture is not to compensate an injured principal. . . . Rather, the central purpose . . . is to protect relationships of trust by discouraging agents' disloyalty.'"). Thus, depending on the circumstances, fee forfeiture can serve two purposes: (1) to serve as restitution to a principal who did not receive the benefit of the bargain due to his agent's breach of fiduciary duties, and (2) to deter an agent from breaching fiduciary duties to clients. *Burrow*, 997 S.W.2d at 237–38; *Swank v. Cunningham*, 258 S.W.3d 647, 673 (Tex. App.—

9

Eastland 2008, pet. denied); *see also Swinnea*, 318 S.W.3d at 872–73 (stating that "a fiduciary may be punished for breaching his duty" and that main purpose of forfeiture is not to compensate, but to protect relationships of trust by discouraging disloyalty; discussing trial court's return of "a significant part of the contractual consideration" as equitable remedy, noting difficulty of categorizing this type of damages award; and stating, "The situation arises because here the contracting party, Swinnea, was a fiduciary, such that we must consider whether under the circumstances an equitable remedy may cross the line from actual damages for breach of contract or fraud (redressing specific harm) to further, equitable return of contractual consideration"); *Saden v. Smith*, 415 S.W.3d 450, 475 (Tex. App.— Houston [1st Dist.] 2013, pet. denied) (citing *Swinnea* and *Burrow* and holding that "the equitable remedy of forfeiture must 'fit the circumstances' presented").

### 3. *Application of the law to the facts of this case*

Here, the plain language of the judgment itself and the trial court's findings of fact support a conclusion that the equitable fee forfeiture award ordered in this case was not primarily intended to compensate the Wilsteins, but to protect relationships of trust by deterring Dernick from breaching its fiduciary duties. *See Swinnea*, 318 S.W.3d at 872–73; *Burrow*, 997 S.W.2d at 238; *Hoover*, 196 S.W.3d at 233. The trial court awarded the fee forfeiture following a separate bench trial, and it listed this award separately from the actual damages awarded by the jury in

10

its final judgment. The trial court's findings of fact following the bench trial included a finding that "equity dictates that Dernick may not retain [the fees collected as a result of its breach of fiduciary duty]," indicating that, rather than compensating the Wilsteins, the purpose of the award was to punish Dernick.

Furthermore, we observe that the present question regarding whether the equitable fee forfeiture constituted compensatory damages is analogous in some ways to the question, addressed by the supreme court in *In re Nalle Plastics*, of whether attorney's fees constituted compensatory damages. In addressing that question, the supreme court held, "Not every amount, even if compensatory, can be considered damages." *In re Nalle Plastics*, 406 S.W.3d at 173. Thus, even to the extent that the fee forfeiture in this case might also be in some ways compensatory—the return to the Wilsteins of fees Dernick would not have been entitled to receive but for its breach of fiduciary duties—we cannot say that such amounts constitute compensatory damages under the facts of this case. Rather, based on the ordinary meaning of the phrase "compensatory damages" and precedent of the Texas Supreme Court and this Court regarding the primary purpose of equitable fee forfeiture, and based on the facts of this case, it does not appear that the trial court abused its discretion in refusing to include the amount of the fee forfeiture in its calculation of the compensatory damages. *See id.* at 171–72 (stating that compensatory damages means "damages sufficient in amount to

indemnify the injured person for the loss suffered"); *Swinnea*, 318 S.W.3d at 872–73 (discussing equitable remedies for breach of fiduciary duty and stating that fiduciary "may be punished for breaching his duty" and that "[t]he main purpose of forfeiture is not to compensate an injured principal" but "to protect relationships of trust by discouraging agents' disloyalty").

The Wilsteins rely on a recent case from the San Antonio Court of Appeals, which held that if a judgment of profit disgorgement is compensatory in nature, a trial court may include this portion of the judgment as "compensatory damages" to be included in a security amount. *Huff Energy Fund, L.P. v. Longview Energy Co.*, No. 04-12-00630-CV, 2014 WL 661710, at *3 (Tex. App.—San Antonio Feb. 12, 2014, orig. proceeding). However, the court in *Huff Energy* did not hold, as the Wilsteins argue, that fiduciary equitable disgorgement is compensatory, nor did it determine which definition of compensatory damages governs the amount of security to be included in supersedeas bonds. *See id.* at *2.

In *Huff Energy*, the jury found that Huff Energy Company and other defendants had breached their fiduciary duties regarding a particular oil and gas interest, and the trial court awarded the principal recovery from the defendants for "[certain] production revenues . . . and an additional $95,500,000.00." *Id.* at *1. The court stated that "a plain reading of this judgment supports the conclusion that the $95,500,000.00 is compensatory in nature." *Id.* at *2. It went on to hold,

12

"When, as here, 'a judgment is unambiguous with no room for interpretation, it is our duty to declare its effect in light of the literal language used.'" *Id.* at *3 (quoting *Harper v. Welchem, Inc.*, 799 S.W.2d 492, 495 (Tex. App.—Houston [14th Dist.] 1990, no writ.)). The *Huff Energy* court held, "in light of the language used in this judgment," that its conclusion that the award at issue in that case constituted compensatory damages was "consistent with the ordinary meaning of that phrase" and, accordingly, that the trial court did not abuse its discretion in including the $95.5 million award in its calculation of the supersedeas bond. *Id.* at *3, *6.

The present case is distinguishable from *Huff Energy*, in which the jury found that the defendants wrongfully obtained assets as a result of their breaches of fiduciary duties, and in which the judgment sought to return the value of these assets that resulted from the breaches of fiduciary duties to the plaintiff by awarding recovery from the defendants for "[certain] production revenues . . . and an additional $95,500,000.00." *Id.* at *1. Here, by contrast, the Wilsteins sought equitable forfeiture of fees that Dernick received as the operator of the McCourt Field Joint Venture and did not ask that Dernick be required to disgorge any profits it received from the venture.[3] Furthermore, unlike *Huff Energy*, where "a plain

---

[3] The Wilsteins' attorney, in his opening statement to the trial court in the bench trial on the fee-forfeiture claim, stated that "the focus in equity is not so much on the plaintiffs and their damages so much as it's on the wrongdoer and whether or

reading of [the] judgment support[ed] the conclusion that the $95,500,000.00 [was] compensatory in nature," the language of the trial court's findings of fact and the language used in the judgment itself indicate that the primary purpose of the forfeiture of fees was not to compensate the Wilsteins but rather to punish Dernick for breaching its fiduciary duty. *See id.* at *2.

This case involves a money judgment, which can be superseded by the deposit equal to the sum of the compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. *See* TEX. R. APP. P. 24.2(a)(1). Dernick provided a deposit in lieu of a supersedeas bond in the amount of $583,427.08, including the $162,194.14 in damages awarded by the jury and rendered in the judgment, interest for the duration of the appeal, and costs. *Id.*; *see also Huff Energy*, 2014 WL 661710, at *3 (quoting *Harper*, 799 S.W.2d at 495). The trial court denied the Wilsteins' request to increase the amount of the deposit by adding the fee-forfeiture award into the amount of compensatory damages. We cannot say that the trial court's ruling was made without reference to any guiding rules or principles, nor do we

not the wrongdoer received a benefit. . . ." The Wilsteins' trial counsel expressly stated, "We're not going to ask you to order Dernick to disgorge any profits," and the Wilsteins instead sought forfeiture of fees that Dernick had received as operator of the McCourt Field. Also, in their trial brief, the Wilsteins argued that fee forfeiture was distinguishable from an award of actual damages.

14

conclude that the trial court acted arbitrarily or unreasonably. *See Ramco Oil &* *Gas*, 171 S.W.3d at 910.

## Conclusion

We conclude that the trial court acted within its discretion in denying the Wilsteins' request to increase the amount of deposit in lieu of a supersedeas bond. Accordingly, we deny the Wilsteins' motion to increase the amount of the deposit in lieu of a supersedeas bond.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Sharp.