

In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00011-CV
_____

MICHELLE LAVENDER, Appellant

V.

SAM LAVENDER, Appellee

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 08-0453

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

As a part of the decree entered in the divorce of Michelle Lavender and Sam Lavender, Michelle was awarded a substantial part of the community property, much of which was encumbered with community debts. This secured property included the home,[1] a boat, a truck, and a camper. Under the terms of the divorce decree, Michelle was ordered to pay all obligations and/or taxes on the home, truck, boat, and camper "as a part of the division of the estate of the parties, and [was required to] indemnify and hold [Sam] and his property harmless from any failure to so discharge." The divorce decree did not particularly specify the debts she was to pay. No provision was made for Sam to be secured by any deed of trust or security instrument in the discharge of the secured indebtedness, the award was not conditioned upon Michelle's act of satisfying the debts, and there was apparently no other nonjudicial means to secure Sam in the payment of the debts.

Within a short period of time after the divorce, Michelle moved out of the former family home to live with her boyfriend and ceased making payments on several of the secured items she was directed to satisfy by the decree of divorce. In order to keep the home from going into foreclosure, Sam satisfied the delinquent payments thereon and paid $800.00 in "back land payments." He also paid the utility bills, truck payments, and the unpaid 2005–2007 ad valorem taxes assessed against

---

[1]Presumably, this is both a manufactured home and the land upon which it was situated. However, in the judgments rendered, there is no mention of a separate debt for each.

the home.[2] Upon Michelle's request or with her acquiescence, the truck was repossessed and sold by the entity holding the debt on it.

Sam filed a lawsuit against Michelle wherein he sought to invoke the indemnification clause in the divorce decree and to secure him in the payment of the debts. The general gist of his petition stated that he had paid some $4,340.69 to discharge debts that Michelle had been ordered to pay and that he had incurred an additional $355.95 in expenses in an effort to preserve his credit rating from damage caused by her failure to pay the debts. Sam also claimed that the truck repossession resulted in a deficiency of $7,059.71, a sum being sought of him by the lender. The petition also sought:

> the imposition of a Priority or Purchase Money Lien on all property mentioned herein, for a Turn Over Order ordering that all property for which the Plaintiff has not been reimbursed at the time of the trial hearing be turned over to the Plaintiff . . . [and] for foreclosure of the purchase money lien established herein.

Michelle responded and a hearing was held on July 31, 2008, wherein the majority of the evidence was presented as a joint stipulation; at some point in time, however, some of the particulars of the rambling stipulation came into dispute and some other evidence was presented. Based upon this hearing, the trial court entered three separate judgments, each dated December 19, 2008. These judgments were:

(A)    An "Indemnity Judgment," which ordered Michelle to pay Sam $9,429.69, to hold him harmless from "any and all debts alleged to be due [to] Nuvell Financial Corporation or any other debt arising from" the debt concerning the truck awarded to her in the divorce decree, and

---

[2]Sam did not seek enforcement for Michelle's share of the income taxes, if any.

3

"[l]ikewise . . . indemnify Sam Lavender from [the] sum of $7,059.71 which is claimed by Nuvell Financial as a result of the foreclosure and forced sale without notice to Sam Lavender." This judgment went on to recite that "All relief not expressly granted herein is hereby denied."

(B)    An "Order of Foreclosure" which made the findings that Michelle had abandoned the real property and that it was "not in any way the homestead of Michelle Lavender and Michelle Lavender has no claim to such property as her homestead." This further granted Sam an interest-bearing judgment in the sum of $9,429.69, secured by a subrogation lien and an equitable vendor's lien on the real property. The judgment then ordered the sale of the property as under execution with the stipulation that any excess realized from the sale which exceeded the judgment amount was to be paid to Sam. As with the judgment mentioned above, this judgment similarly recited that "All relief requested in this case and not expressly granted is denied," but also added that "This judgment finally disposes of all parties and claims and is appealable."

(C)    The third judgment was entitled, "Judgment Establishing Lien and Foreclosure." It reiterated the findings in the "Order of Foreclosure" that the real estate was not Michelle's homestead and also repeated that Sam was given an equitable subrogation lien (but for an unspecified amount) against the real estate, adding that this was also to be a lien against all real estate owned by Michelle in Harrison County. This judgment contained no claims of finality.

4

Michelle has appealed, complaining that the trial court erred in having entered three different final judgments and further maintaining that the evidence was factually insufficient to support the awards.

Sam has responded by asserting that the "Judgment Establishing Lien and Foreclosure" is a nullity and that the "Order of Foreclosure" vacated the "Indemnity Judgment," leaving the "Order of Foreclosure" as the sole remaining final judgment.

There are some cases, such as in probate proceedings and receivership proceedings,[3] in which more than one final, appealable judgment can be rendered. In all other cases, the long-standing rule that "[o]nly one final judgment shall be rendered in any cause" applies. TEX. R. CIV. P. 301.

Certainly, there are circumstances in which there would appear to have been more than one judgment entered. For instance, there have been circumstances in which a purportedly final judgment was rendered only to have another final judgment entered without any mention of the second judgment having been for the purpose of setting aside the first. *City of W. Lake Hills v. State ex rel. City of Austin*, 466 S.W.2d 722 (Tex. 1971). There are distinguishing factors here. In *West Lake Hills*, almost a month intervened between the entry of the first purported judgment and the second; the first judgment made no award of costs, whereas the second did. The court determined

---

[3]*See Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995) (involving probate proceedings); *Huston v. Fed. Deposit Ins. Corp.*, 800 S.W.2d 845, 847 (Tex. 1990) (involving receivership proceedings).

that there were not two judgments, but only one—the second—and although the second judgment did not specifically set aside the first, the court presumed that it replaced the first. *Id.* at 727.

At one time, the Texas Supreme Court had taken the position that one key in determining whether a judgment is a final one was to see if the judgment purported to dispose of all of the parties and issues, most often by including what is sometimes known as a "Mother Hubbard" clause.[4] *Mafrige v. Ross*, 866 S.W.2d 590 (Tex. 1993). However, because of the subsequent ubiquity of the phraseology and because of its latent ambiguity in different contexts, the fact of the existence of a Mother Hubbard clause in a judgment rendered it "inapt for determining finality." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001). For instance, variations of this Mother Hubbard clause are contained in two of the three judgments rendered in this case.

Sam correctly points out that generally "any change in a judgment during the trial court's period of plenary power should be treated as a modified, corrected, or reformed judgment that 'presumptively vacates' the trial court's former judgment unless the record indicates a contrary intent." *Quanaim v. Frasco Restaurant & Catering*, 17 S.W.3d 30, 38 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Sam further places reliance on *Tindall v. Bishop, Peterson & Sharp, P.C.*, 961 S.W.2d 248 (Tex. App.—Houston [1st Dist.] 1997, no writ). However, the situations in *Quanaim* and *Tindall* do not mirror what we have here. In each of those cases, some days intervened between the entry of the different "final" judgments; in each of those cases, a determination of the

_____

[4]As used in this context, a Mother Hubbard clause recites that all relief requested and not granted is denied.

6

chronology of entry of these judgments was evident on their faces. In other words, it was very apparent in each circumstance that a purported final judgment had been entered and later (still during the period of time before the trial court lost plenary jurisdiction) a second final judgment was entered that contained no specific language purporting to set aside the first-entered judgment. In each of those cases, it was correctly determined that the appeals court could infer that the intention of the trial court was to set aside the first-entered judgment and replace it with a second, leaving only one final judgment. Here, however, we have three separate judgments (two of which purported to finally resolve all questions before the court), all of which were apparently entered simultaneously; each was dated the same date and the clerk's file stamp showed they were each filed at 11:44 a.m. on the same date. If they were not the subject of simultaneous entry, it is impossible to determine from the record which judgment antedated another. Because it is impossible to determine which of these was the last act of the court in granting judgment, it would be pure conjecture to speculate which of the judgments acted to revoke another. As mentioned above, there can only be one final judgment in a cause such as this. Not being clairvoyant, we are in no position to determine which of this spate of judgments was intended to be the final judgment of the court and there is no time frame from which we can infer the intention of the court that one of the judgments would supplant another.

Cases in which simultaneous judgments have been entered in the same cause appear to be extraordinarily rare in Texas. There is at least one suggestion that, faced with the entry of multiple judgments, the judgments "must be read together as one final judgment." *Rodriguez v. Seider*,

7

No. 03-04-00454-CV, 2005 Tex. App. LEXIS 2374, at *4 (Tex. App.—Austin Mar. 31, 2005, no pet.) (justice court entered one judgment on plaintiff's claim and another judgment on cross-claim filed by defendant).

However, this situation does not lend itself to a blending of the judgments to read as one. One of the three judgments in this case made no award and two judgments each purport to grant Sam a money judgment of $9,429.69. If the judgments are read together to be as if one judgment had been granted, would it be proper to grant a solitary money judgment of $9,429.69 or have a judgment that makes one award of that sum which is secured by a lien and another award of that amount which is not secured by a lien?

One might consider abating this matter to the trial court to have it enter a judgment which reflects its intention. However, we take judicial notice that the judge who entered this judgment is now retired and has been replaced by another judge. Without going outside the existing record, the new judge would likewise find it impossible to determine what was intended here.

As a result, we find that the trial court erred in entering three final judgments and therefore, we set aside all of the judgments. Because this ruling is determinative of the appeal, we need not proceed further to determine whether the evidence is factually sufficient to support a judgment.

We reverse the judgment of the trial court and remand for further proceedings.


Bailey C. Moseley
Justice

Date Submitted:     June 19, 2009
Date Decided:       June 23, 2009