

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-12-00630-CV

**THE HUFF ENERGY FUND, L.P.**; WRH Energy Partners, L.L.C.; William R. "Bill" Huff;
Rick D'Angelo; Ed Dartley; Bryan Bloom; and Riley-Huff Energy Group, LLC;
Appellants

v.

**LONGVIEW ENERGY COMPANY**,
Appellee

From the 365th Judicial District Court, Zavala County, Texas
Trial Court No. 11-09-12583-ZCVAJA
Honorable Amado J. Abascal, III, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Sandee Bryan Marion, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  February 12, 2014

APPELLANTS' RULE 24.4 MOTION GRANTED IN PART AND DENIED IN PART

In this opinion, we address appellants' complaints regarding the amount of a court-ordered

supersedeas bond and court-ordered discovery.[1]  We consider first whether the statutory cap on a

supersedeas bond contained in Texas Civil Practice and Remedies Code section 52.006 applies per

judgment or per judgment debtor.  The trial court in this case determined the cap applied per

---

[1] In ruling on a motion under Texas Rule of Appellate Procedure 24.4, this court may require that the security amount set by the trial court be increased or decreased.  *See* TEX. R. APP. P. 24.4(d).

judgment debtor. Appellants argue the cap applies per judgment. We also consider whether the trial court erred in ordering ongoing discovery "for the duration of the appeal." Appellants assert post-judgment discovery is not permitted under Texas Rule of Civil Procedure 621a.

## PROCEDURAL BACKGROUND

Appellants, The Huff Energy Fund, L.P. ("Huff Energy"); WRH Energy Partners, LLC; William Huff; Rick D'Angelo; and Riley-Huff Energy Group, LLC ("Riley-Huff") (collectively, "appellants") are the judgment-debtors below. In the underlying judgment that is the subject of this pending appeal, the trial court granted a constructive trust over all right, title, and interest of Riley-Huff in and to certain assets, and ordered that appellee, Longview Energy Company ("Longview"), recover "from the [appellants], jointly and severally, [certain] production revenues . . . and an additional $95,500,000.00." Appellants jointly posted a supersedeas bond in the amount of $25 million ("the joint bond"). The trial court subsequently ordered appellants to increase the security as follows: "[T]o the extent [appellants] wish to stay the judgment's enforcement pending appeal, The Huff Energy Fund, L.P., WRH Energy Partners, LLC, William Huff, and Rick D'Angelo are each ORDERED to post security in the amount of $25 million or 50% of the [appellant's] current net worth, whichever is less . . . ." The trial court also ordered Huff Energy to produce certain documents during the pendency of the appeal.

In addition to their joint notice of appeal from the underlying judgment, appellants also filed a motion pursuant to Texas Rule of Appellate Procedure 24.4 seeking review of (1) the trial court's June 25, 2013 "Order Granting Longview's Motion to Increase Security" that requires four of the five appellants "to [each] post security in the amount of $25 million or 50% of the [appellant's] current net worth, whichever is less, within 20 days of the date of this order" and (2) the trial court's June 25, 2013 order directing Huff Energy to produce or cause to be produced a variety of documents "pertaining to all wells and leases within the constructive trust in which

Riley-Huff or The Huff Energy Fund, L.P. holds an interest . . . on a monthly basis for the duration of the appeal."

## SUPERSEDEAS BOND

The alleged excessiveness of the amount of security, as determined by the trial court, is reviewed under Rule 24.4 using an abuse-of-discretion standard. *See Ramco Oil & Gas Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2005, published order); *TransAmerican Natural Gas Corp. v. Finkelstein*, 905 S.W.2d 412, 414 (Tex. App.—San Antonio 1995, pet. dism'd). Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreasonably. *Ramco*, 171 S.W.3d at 910. But, a trial court has no discretion in determining what the law is and applying the law to the facts. *Id.* Accordingly, the trial court's interpretation of applicable statutes is reviewed *de novo*. *Id.* at 912. A failure by the trial court to analyze or apply the law correctly is an abuse of discretion. *Id.* at 910.

## A.     Compensatory Damages

Appellants contend this case does not involve compensatory damages because Longview sought recovery based on disgorgement, which is not compensatory in nature. Therefore, appellants first assert the trial court erred in requiring four of the appellants to each post additional security because the $25 million joint bond is sufficient to supersede the entire "non-compensatory" judgment award.

The Texas Civil Practice and Remedies Code provides that, subject to a statutory cap, "when a judgment is for money, the amount of security must equal the sum of: (1) *the amount of compensatory damages* awarded in the judgment; (2) interest for the estimated duration of the appeal; and (3) costs awarded in the judgment." TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a) (West 2008) (emphasis added). Chapter 52 does not define "compensatory damages," however,

the Texas Supreme Court has recently considered the definition of "compensatory damages" in the context of an award of attorney's fees. *See In re Nalle Plastics Family Ltd. Partnership*, 406 S.W.3d 168 (Tex. 2013). The *Nalle* Court first noted that "Chapter 52 does not define 'compensatory damages.'" *Id.* at 171. The Court then referred to Black's Law Dictionary's definition of the term as "damages sufficient in amount to indemnify the injured person for the loss suffered." *Id.* (citing BLACK'S LAW DICTIONARY 445 (9th ed. 2009)). "The dictionary notes that the phrase is interchangeable with 'actual damages,' defined as '[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses.'" *Id.* at 171-72.

The Court also referred to Civil Practice and Remedies Code Chapter 41, which defines "compensatory damages [as] economic and noneconomic damages," but not exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.001(8). "Economic damages" are those "intended to compensate a claimant for actual economic or pecuniary loss." *Id.* § 41.001(4). "Noneconomic damages" are "damages awarded for the purpose of compensating a claimant for . . . nonpecuniary losses of any kind other than exemplary damages." *Id.* § 41.001(12). "Exemplary damages" are "any damages awarded as a penalty or by way of punishment but not for compensatory purposes." *Id.* § 41.001(5). Although the *Nalle* Court did not decide whether Chapter 41's "compensatory damages" definition explicitly governed, the Court concluded that, "[a]t the very least, it is consistent with our own conclusion based on the phrase's ordinary meaning and our precedent— that attorney's fees incurred in the prosecution or defense of a claim are not compensatory damages." *Nalle*, 406 S.W.3d at 174.

Like the Court in *Nalle*, we need not decide whether Chapter 41's definition of "compensatory damages" explicitly governs because a plain reading of this judgment supports the conclusion that the $95,500,000.00 is compensatory in nature. The trial court rendered its

judgment "based on the verdict, the evidence at trial, and the pleadings, and arguments of the parties." In its petition, Longview sought "a constructive trust over all the subject leases in [appellants'] possession or on any assets that the [appellants] obtained by virtue of the usurpation [of corporate opportunity]," punitive damages, and title to stolen leases, "but if it is unable to recover title for any reason . . . [recovery of] the value of the stolen leases."

The jury answered affirmatively to each question inquiring whether one or more of appellants failed to comply with his or her fiduciary duty and whether one or more of appellants wrongfully obtained assets in the Eagle Ford shale as a result of this failure. Based on these affirmative answers, the jury determined the (1) market value of the Eagle Ford shale assets that Riley-Huff acquired as a result of the failure to comply with a fiduciary duty, (2) what Riley-Huff paid for the Eagle Ford shale assets it acquired, (3) the amount of past production revenues Riley-Huff derived from these assets, and (4) what Riley-Huff paid to develop these assets. In addition to the constructive trust, the trial court awarded Longview recovery "from the [appellants], jointly and severally, [certain] production revenues . . . and an additional $95,500,000.00." Nothing in the judgment indicates the award of $95,500,000.00 is punitive in nature. *See Tex. Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 344 S.W.3d 628, 629 (Tex. App.—Houston [14th Dist.] 2011, published order) (noting that in a prior order "this Court granted appellant's first motion and reversed the trial court's initial determination of security, as it was improperly calculated upon damages that are, *by order of the trial court*, punitive in nature.") (emphasis added). Any attempt to go behind the trial court's judgment would be speculative. When, as here, "a judgment is unambiguous with no room for interpretation, it is our duty to declare its effect in light of the literal language used." *Harper v. Welchem, Inc.*, 799 S.W.2d 492, 495 (Tex. App.—Houston [14th Dist.] 1990, no writ). Accordingly, in light of the language used in this judgment

our conclusion that the $95,500,000.00 constitutes "compensatory damages" is consistent with the ordinary meaning of that phrase.

### B. Maximum Amount of Security

Appellants next assert the trial court erred in requiring four of the appellants to each post additional security because $25 million is the maximum amount of security required by law, and the $25 million cap applies per judgment, and not per judgment-debtor.

Section 52.006 also provides that "[n]otwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of: (1) 50 percent of the judgment debtor's net worth; or (2) $25 million." TEX. CIV. PRAC. & REM. CODE § 52.006(b). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. TEX. GOV'T CODE ANN. § 312.005 (West 2013); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). To discern that intent, we begin with the statute's words. TEX. GOV'T CODE § 312.002; *see TGS–NOPEC*, 340 S.W.3d at 439. We consider the statute as a whole rather than focusing upon individual provisions. *TGS–NOPEC*, 340 S.W.3d at 439. If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage. *Id.* Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning. *Id.* Words and phrases shall be read in context and construed according to the rules of grammar and common usage, but words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly. TEX. GOV'T CODE § 311.011. We presume the legislature selected statutory words, phrases, and expressions deliberately and purposefully. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). We also presume the Legislature was aware

of the background law and acted with reference to it. *See Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990).

Although Chapter 52 refers to "judgment debtor" in the singular, the Legislature has instructed such number-specific references in codes are not dispositive. *See* TEX. GOV'T CODE §§ 311.012(b), 312.003(a) ("[t]he singular includes the plural and the plural includes the singular"). Therefore, we begin with the statutory definition of "security" in Chapter 52, which is "a bond or deposit posted, as provided by the Texas Rules of Appellate Procedure, by a judgment debtor to suspend execution of the judgment during appeal of the judgment." TEX. CIV. PRAC. & REM. CODE § 52.001. Next, we turn to the statutory amount of security required to suspend a judgment, which is contained in section 52.006(a). When, as here, "a judgment is for money, the amount of security must equal the sum of: (1) the amount of compensatory damages awarded in the judgment; (2) interest for the estimated duration of the appeal; and (3) costs awarded in the judgment." *Id.* § 52.006(a). Finally, we turn to the statutory calculation of the amount of security required to suspend a judgment, which is as follows: "Notwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of: (1) 50 percent of the judgment debtor's net worth; or (2) $25 million." *Id.* § 52.006(b).

We construe section 52.006 as linking the "security" to "the judgment." The general rule is that there can only be one final judgment in a case. TEX. R. CIV. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law."); *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001).[2] Because the statute links the security that must be posted to a single judgment, we believe the cap on the amount of security that must be posted to suspend a single final judgment applies without regard to the number of

---

[2] Exceptions have been recognized for probate and receiver cases. *Lehmann*, 39 S.W.3d at 192 n. 1; *Lavender v. Lavender*, 291 S.W.3d 19, 21 (Tex. App.—Texarkana 2009, no pet.).

judgment debtors. Therefore, we conclude that, under the plain language of the statute, the cap is applied per judgment and not per judgment debtor.[3]

We believe our conclusion is supported by the purpose of the Legislature's 2003 enactment of section 52.006, which "'reflect[ed] a new balance between the judgment creditor's right in the judgment and the dissipation of the judgment debtor's assets during the appeal against the judgment debtor's right to meaningful and easier access to appellate review.'" *In re Nalle Plastics Family Ltd. Partnership*, 406 S.W.3d 168, 170 (Tex. 2013) (quoting Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal after House Bill 4*, 46 S. TEX. L. REV. 1035, 1038 (2005)). Thus, the policy behind section 52.006 is two-fold.

"Historically . . . the purpose of a supersedeas bond had been to protect the judgment creditor from incurring damages that result from delay in enforcing the judgment pending appeal." *Reshuffling the Deck*, 46 S. Tex. L. Rev. at 1083. The 2003 "amendments addressing security requirements reflected a policy shift away from a primary goal of protecting judgment creditors toward the goal of protecting judgment debtors' ability to appeal." *Shook v. Walden*, 304 S.W.3d 910, 918-19 (Tex. App.—Austin 2010, no pet.). Instead of being required to provide security in the full amount of the judgment, interest, and costs (as judgment debtors seeking to appeal formerly

---

[3] Longview relies on the use of the disjunctive word "or" to argue the singular "a judgment debtor" applies equally to both alternative methods of calculating the amount of the security. Longview also relies on the only appellate court to directly address the issue of whether the $25 million cap applies per judgment debtor. In a 2009 unpublished order, the Tyler Court of Appeals noted that "Chapter 52 pertains solely to the security that must be posted to supersede a money judgment [and] that there is 'not one single reference in Chapter 52 to judgment debtors in the plural.'" *O'Quinn v. Wood*, No. 12-08-00011-CV, 2009 WL 2367133, *5 (Tex. App.—Tyler June 10, 2009, order). "All references are to 'a judgment debtor' or 'the judgment debtor,' and we see nothing in Chapter 52 to indicate a legislative intent that these terms include the plural." *Id.* "Moreover, when determining the maximum amount of security, 'the judgment debtor's net worth' must be calculated per judgment debtor, rather than collectively." *Id.* (citing to *Ramco Oil*, 171 S.W.3d at 911-12 (holding trial court abuses its discretion if it sets amount of security based on net worth without calculating net worth for each jointly and severally liable judgment debtor)). "Thus, 'the judgment debtor' is singular in that context." *Id.* The court concluded "the statutory cap imposed by subsection 52.006(b) applies per judgment debtor instead of per judgment." *Id.* at *6. For the reasons stated in this opinion, we disagree with the *O'Quinn* court's conclusion.

were required to do), the judgment debtor may now more easily suspend enforcement of money judgments by posting security only on "compensatory damages," "interest for the duration of appeal," and "costs awarded in the judgment." *Reshuffling the Deck*, 46 S. TEX. L. REV. at 1038. And, a trial court must reduce the amount of security if a judgment debtor shows it is likely to suffer substantial economic harm—a less onerous burden than the previous standard, which required a showing both of irreparable harm to the debtor and that a lesser amount would not substantially impair a judgment creditor's ability to recover under the judgment after appellate remedies were exhausted. *Nalle*, 406 S.W.3d at 170.

The rebalancing effort did not, however, wholly discard the original interest in protecting judgment-creditors from suffering the harms of unsecured and unpaid judgments. *Reshuffling the Deck*, 46 S. Tex. L. Rev. at 1038, 1084. The goal in setting a supersedeas bond is to require an amount that will adequately protect the judgment-creditor against any loss or damage occasioned by the appeal. *Whitmire v. Greenridge Apts.*, 333 S.W.3d 255, 262 (Tex. App.—Houston [1st Dist.] 2010, pet. dism'd).

We believe the "new balance" is struck by capping the amount of the security on a per judgment basis when a single judgment is rendered against multiple judgment debtors jointly and singly. If this amount is inadequate to protect the judgment creditor, then the trial court may "enjoin[] the judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, but the trial court may not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business." TEX. CIV. PRAC. & REM. CODE § 52.006(e). A judgment creditor is further protected by Texas Rule of Appellate Procedure 24.1, which allows a trial court to "make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause" so long as the order is not in conflict with Chapter 52. TEX. R. APP. P. 24.1(e); TEX. CIV. PRAC. & REM. CODE

§ 52.005. On the other hand, if the amount of the security "is likely to [cause the judgment-debtor] substantial economic harm[,] . . . the trial court shall lower the amount of the security to an amount that will not cause the judgment debtor substantial economic harm." *Id.* at § 52.006(c). And under either scenario, "[a]n appellate court may review the amount of security as allowed under Rule 24, Texas Rules of Appellate Procedure, except that when a judgment is for money, the appellate court may not modify the amount of security to exceed the amount allowed under this section." *Id.* § 52.006(d).

Because we conclude the amount of the security required to suspend a judgment pursuant section 52.006(b) applies per judgment and not per judgment debtor, the trial court erred in ordering appellants to increase the security as follows: "[T]o the extent [appellants] wish to stay the judgment's enforcement pending appeal, The Huff Energy Fund, L.P., WRH Energy Partners, LLC, William Huff, and Rick D'Angelo are each ORDERED to post security in the amount of $25 million or 50% of the [appellant's] current net worth, whichever is less . . . ."

## POST-JUDGMENT DISCOVERY

In its second issue, Riley-Huff contends the trial court's order granting Longview's request for ongoing discovery "for the duration of the appeal" was an abuse of discretion.

Texas Rule of Civil Procedure 621a authorizes post-judgment discovery in two instances: (1) for the purpose of obtaining information to aid in the enforcement of a judgment so long as the judgment has not been suspended by a supersedeas bond, or (2) for the purpose of obtaining information relevant to motions allowed by Rule 24 of the Texas Rules of Appellate Procedure.[4]

---

[4] The language of Texas Rule of Civil Procedure 621a provides for information "for the purpose of obtaining information relevant to motions allowed by Texas Rules of Appellate Procedure 47 and 49," however, the Rule contains a footnote indicating those Rules have since been merged into Texas Rule of Appellate Procedure 24. *See* TEX. R. CIV. P. 621a n.2; *see also In re Emeritus Corp.*, 179 S.W.3d 112, 116 (Tex. App.—San Antonio 2005, orig. proceeding).

TEX. R. CIV. P. 621a.  However, Texas Rule of Appellate Procedure 24.1(e) provides: "The trial court may make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause."  TEX. R. APP. P. 24.1(e).

Longview filed a motion under Rule 24.1(e) requesting the court order Riley-Huff to provide Longview with certain information and documents on a periodic basis so that Longview could monitor the status of the constructive trust awarded to Longview in the final judgment. Longview argued that Rule 24.1(e) gave the trial court the discretion to enter any order to protect a judgment creditor, including a discovery order allowing Longview to "monitor" the constructive trust it was awarded.  Riley-Huff, on the other hand, argues Rule of Civil Procedure 621a, rather than Rule of Appellate Procedure 24.1(e), governs post-judgment discovery and, because the trial court's order granting discovery does not address either of the two instances in which post-judgment discovery is allowed under Rule 621a, the trial court abused its discretion.

Here, the final judgment awarded to Longview both money ($95.5 million) and property in the form of a constructive trust over a large number of acres in the Eagle Ford shale.  In its Rule 24.1(e) motion, Longview alleged the property assets controlled by Riley-Huff were rapidly depleting and expiring.  Longview alleged that "the value of these depleting trust assets is unsecured," and, therefore, unless it is provided with information through a discovery order, it will have no way of knowing whether Longview's interest in the constructive trust was protected while the appeal was pending.  At the hearing on the motion, Longview argued a "large quantity" of the leases that are the subject of the constructive trust had been let go or have dissipated.  In support, Longview introduced multiple exhibits demonstrating the release of various oil and gas mineral leases and interests covering thousands of acres, some of which may be subject to the constructive trust.

To the extent the order does not conflict with Civil Practice and Remedies Code Chapter 52, Texas Rule of Appellate Procedure 24.1 specifically allows a trial court to "make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause." TEX. R. APP. P. 24(e); *see Miller v. Kennedy & Minshew, Prof'l Corp.*, 80 S.W.3d 161, 166 (Tex. App.—Fort Worth 2002, no pet.) (concluding supersedeas bond was insufficient to protect judgment creditors and, citing Rule 24.1(e), holding "the trial court is required to order the specific action it deems necessary to adequately protect the judgment creditor"). Longview presented evidence at the hearing showing the potential for dissipation of the assets subject to the constructive trust it was awarded in the judgment. We, therefore, conclude the trial court did not abuse its discretion in ordering, pursuant to Rule 24.1(e), the periodic reporting to monitor and thus secure the trust assets during pendency of the appeal when, as here, evidence was presented demonstrating the assets controlled by the judgment debtors are at risk of expiring or being depleted. We also conclude the order does not conflict with Chapter 52.

## CONCLUSION

For the reasons stated above, we GRANT in part appellants' Rule 24.4 Motion as to the trial court's June 25, 2013 "Order Granting Longview's Motion to Increase Security" and we REVERSE the order requiring The Huff Energy Fund, L.P., WRH Energy Partners, LLC, William Huff, and Rick D'Angelo to each "post security in the amount of $25 million or 50% of the defendant's current net worth, whichever is less . . . ." We DENY in part appellants' Rule 24.4 Motion as to the trial court's June 25, 2013 order directing Huff Energy to produce or cause to be produced a variety of documents "pertaining to all wells and leases within the constructive trust in which Riley-Huff or The Huff Energy Fund, L.P. holds an interest . . . on a monthly basis for the duration of the appeal."

Sandee Bryan Marion, Justice