**FAIRWAYS OFFSHORE EXPLORATION, INC.,**
Appellant,

v.

**PATTERSON SERVICES, INC. and Cudd Pressure Control, Inc.,**
Appellees.

No. 01–11–00079–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 21, 2011.

Christina Elise Ponig, Ileana M. Blanco, Mark Allen White, DLA Piper LLP (US), Houston, TX, for Appellant.

H. Dwayne Newton, Newton Jones & Spaeth, Houston, TX, Michael H. Bagot, Thomas A. Rayer Jr., Pan American Life Center, Ste 1660, New Orleans, LA, for Appellees.

Panel consists of Justices JENNINGS, HIGLEY, and BROWN.

## ORDER

TERRY JENNINGS, Justice.

Judgment creditors, Patterson Services, Inc. ("Patterson") and Cudd Pressure Control, Inc. ("Cudd"), have filed in this Court a Motion for Enlargement of Supersedeas Bond,[1] challenging the trial court's order setting the amount of the bond filed by judgment debtor, Fairways Offshore Exploration, Inc. ("Fairways"), to suspend enforcement of the underlying judgment against it. Patterson and Cudd contend that the trial court erred in not including in its calculation of the amount of the supersedeas bond its award of attorney's fees to Patterson and Cudd and its award of prejudgment interest on the damages awarded to Patterson on its negligence claim.

We grant Patterson and Cudd's motion and order the supersedeas bond increased to include the amount of the trial court's award of attorney's fees to Patterson and Cudd and prejudgment interest to Patterson.

### Background

In its judgment, the trial court awarded Patterson $375,426.30 as actual damages on its negligence claim, $521,427.05 as actual damages on its breach of contract claim, $99,022.44 as pre-judgment interest on its actual damages, $385,000 for its attorney's fees expended through trial, and $7,387.40 in court costs. The trial court awarded Cudd $198,079.28 as actual damages on its breach of contract claim, $21,924.39 as pre-judgment interest on its actual damages, $312,375 for its attorney's fees expended through trial, and $4,748.78 in court costs.

Fairways initially filed a supersedeas bond in the amount of $1,162,422.25, plus

---

1. *See* TEX.R.APP. P. 24.4(a).

post-judgment interest at the rate of five percent (5%) for one year from the date of judgment, to secure the contract and negligence damages awarded to Patterson, the contract damages awarded to Cudd, and the post-judgment interest awarded to both Patterson and Cudd. Patterson and Cudd then filed a motion, requesting that the trial court increase the amount of supersedeas bond to secure the trial court's awards of attorney's fees and prejudgment interest. The trial court granted this motion in part, ordering the amount of the bond increased by $79,495.65 to secure the portion of the prejudgment interest awarded to Patterson ($57,571.26) and Cudd ($21,924.39) for their respective contract damages. The amount of the bond, as increased by the trial court's order, did not secure the trial court's award of attorney's fees to Patterson and Cudd or its award of prejudgment interest to Patterson for its negligence damages.[2]

## Standard of Review

 On the motion of a party, an appellate court may review the sufficiency or excessiveness of the amount of bond set by a trial court to secure payment of a money judgment during the pendency of an appeal in a civil case. TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(d) (Vernon Supp. 2010); TEX.R.APP. P. 24.4(a). We review the trial court's determination of the amount of security under an abuse of discretion standard. *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.,* 171 S.W.3d 905, 909 (Tex.App.-Houston [14th Dist] 2005, no pet). Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily and unreason-

ably. *See McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995). However, a trial court has no discretion in determining what the law is and applying the law to the facts. *See Gonzalez v. Reliant Energy, Inc.,* 159 S.W.3d 615, 623–24 (Tex.2005). A failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.* If we conclude that the trial court abused its discretion, we may order the amount of the security decreased or increased in an amount not to exceed the lesser of 50 percent of the judgment debtor's net worth, or $25 million. *See* TEX. CIV. PRAC. & REM.CODE ANN. 52.006(d); TEX.R.APP. P. 24.4(a), (d). For example, this Court, under former Texas Rule of Appellate Procedure 47(b), increased the amount of a supersedeas bond to include post-judgment interest, explaining that "[a] supersedeas bond that does not include interest is 'patently ineffective.'" *Nat'l Convenience Stores, Inc. v. Martinez,* 763 S.W.2d 960, 960 (Tex.App.-Houston [1st Dist.] 1989, no writ).

## A Good and Sufficient Bond

 The key issue presented to this Court is whether the amount of the supersedeas bond set by the trial court is "good and sufficient" to secure the money judgment of Patterson and Cudd from losses caused by the delay of Fairways' appeal. *See* TEX.R.APP. P. 24.1(a)(2). The "primary purpose" of a supersedeas bond is "security," and it is "intended to indemnify the judgment creditor from losses caused by delay of appeal." *Muniz v. Vasquez,* 797 S.W.2d 147, 150 (Tex.App.-Houston [14th Dist.] 1990, no writ). As has been explained,

> The effect of a supersedeas bond is to suspend execution of judgment, so the

---

2. In its judgment, the trial court also awarded Patterson and Cudd appellate attorney's fees, but Patterson and Cudd do not seek to secure

the amounts of those fees with an increased supersedeas bond.

judgment creditor can look only to the bond for satisfaction of the judgment. To prevent recovery on the bond posted by the judgment debtor is to prevent recovery of the judgment.

*Butron v. Cantu,* 960 S.W.2d 91, 95 (Tex. App.-Corpus Christi 1997, no writ).

A judgment debtor may file a "good and sufficient" bond to supersede a trial court's judgment in a civil case and thereby suspend enforcement of the judgment during the pendency of an appeal. TEX.R.APP. P. 24(a)(2); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006. When a judgment is for the recovery of "money," the amount of security "must equal the sum" of:

(1) the amount of *compensatory* damages awarded in the judgment;

(2) interest for the estimated duration of the appeal, and

(3) costs awarded in the judgment.

TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(a) (emphasis added); *see also* TEX.R.APP. P. 24.2(a)(1). However, the amount of security "must not exceed" the lesser of 50 percent of the judgment debtor's net worth or $25 million.[3] TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(b); *see also* TEX.R.APP. P. 24.2(a)(1).

Here, the parties dispute whether the trial court, in calculating the amount of the supersedeas bond, was required to include in its sum, as compensatory damages, the award of attorney's fees to Patterson and Cudd and the award of prejudgment interest on the damages awarded to Patterson on its negligence claim. Both sides recognize that since the Texas Legislature enacted section 52.006 in 2003, some have

called into question whether the amount of attorney's fees and prejudgment interest awarded in a money judgment must be included in calculating the amount of security necessary to suspend enforcement of the judgment pending an appeal. *See* Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal After House Bill 4,* 46 S. TEX. L.REV. 1035, 1038, 1088 (2005) (stating that "[i]t is unclear whether attorneys' fees and prejudgment interest must be secured" under section 52.006 and that "[ultimately the issue of what is considered compensatory damages will be judicially determined").

### Attorney's Fees

In determining whether attorney's fees awarded in a money judgment should be secured pursuant to section 52.006, we note that prior to the enactment of section 52.006, which was part of legislation commonly referred to as "House Bill 4," the amount of security required to supersede a money judgment was governed by the former version of Texas Rule of Appellate Procedure 24. *See* Former TEX.R.APP. P. 24.2(a)(1) (eff. Sept. 1, 1997) (amended Aug. 29, 2003 and Sept. 10, 2003, eff. Sept. 1, 2003; amended Mar. 10, 2008 and Aug. 20, 2008, eff. Sept. 1, 2008). The former version of rule 24 required a bond for "*at least the amount of the judgment,* interest for the estimated duration of the appeal, and costs." *See id.* (emphasis added). Texas courts interpreted the former version of rule 24 to require security for the amount of attorney's fees awarded in a money judgment. *See Shook v. Walden,* 304 S.W.3d 910, 918 (Tex.App.-Austin 2010,

---

3. Moreover, a trial court "must lower" the amount of security "to an amount that will not cause the judgment debtor substantial economic harm if, after notice to all parties and a hearing, the court finds that posting a bond" in the required amount "is likely to cause the judgment debtor substantial eco-

nomic harm." TEX.R.APP. P. 24.2(b); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(c). Here, there is nothing in the record to suggest that the amount of the bond set by the trial court was affected by sections 52.006(b) and 56.006(c) of the Texas Civil Practice and Remedies Code or rules 24.2(a)(1) and 24.2(b).

no pet.) (citing *Hamilton v. Hi-Plains Truck Brokers, Inc.,* 23 S.W.3d 442, 443 n. 1 (Tex.App.-Amarillo 2000) (per curiam order)).

Fairways argues that section 52.006's reference to "the amount of compensatory damages awarded in the judgment," instead of the former version of rule 24's reference to "the amount of the judgment," evidences a legislative intent to change the prior law so that attorney's fees awarded to a prevailing party in a money judgment no longer need be secured for a judgment debtor to suspend enforcement of a money judgment. Fairways acknowledges that there is no direct legislative history to support its argument that the legislature intended to make such a change in the law, but it urges us to consider the definition of "compensatory damages" in Chapter 41 of the Texas Civil Practice and Remedies Code as well as the general purposes of House Bill 4. Fairways' arguments are unpersuasive.

Although the Texas Legislature did not define the term "compensatory damages" in section 52.006, the term generally includes "[d]amages sufficient in amount to indemnify the injured person for the loss suffered." BLACK'S LAW DICTIONARY 445 (9th ed. 2009). Here, the trial court's judgment establishes that Patterson and Cudd, both of which prevailed against Fairways in the trial court, expended attorney's fees to recover a money judgment on their respective breach of contract claims against Fairways. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon Supp. 2010). Thus, the attorney's fees awarded by the trial court to Patter-

son and Cudd represent recoverable out-of-pocket losses that they incurred in prosecuting their breach of contract claims against Fairways. *See id.* We conclude that these fees, which the trial court awarded to Patterson and Cudd to compensate them for the amount of money that they expended to obtain relief against Fairways, fit within the common meaning of "compensatory damages." [4] There is nothing in the plain language of section 52.006 that evidences a legislative intent to either change the law in regard to securing an award of recoverable attorney's fees in a money judgment or exclude attorney's fees from the common meaning of "compensatory damages."

In regard to the definition of "compensatory damages" in Chapter 41, we note that, for purposes of that chapter, the term "[compensatory damages" is defined to mean "economic and noneconomic damages" and it "does not include exemplary damages." TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(8) (Vernon Supp. 2010). Chapter 41 defines the term "[economic damages" to mean "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss" and it "does not include exemplary damages or noneconomic damages." *Id.* § 41.001(4). And Chapter 41 defines the term "[n]oneconomic damages" to mean "damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other

---

4. By way of example, we note that in litigation involving breach of contract claims, an award of attorney's fees may sometimes equal or exceed the amount of actual damages awarded to a prevailing party. In such a case, the prevailing party's success in prose-

cuting their claim could easily be rendered pyrrhic if the judgment debtor could suspend enforcement of the judgment without having to post a bond sufficient to cover the awarded attorney's fees.

nonpecuniary losses of any kind other than exemplary damages." *Id.* § 41.001(12).

In its opinion in *Shook,* the Austin Court of Appeals went to great lengths to explain why these definitions should be applied when interpreting the term "compensatory damages" in section 52.006. 304 S.W.3d at 920–22; *see also PopCap Games, Inc. v. MumboJumbo LLC,* 317 S.W.3d 913 (Tex. App.-Dallas 2010, no pet.) (agreeing with *Shook* and holding that section 52.006 does not require superseding of attorney's fees). The court in *Shook* opined that Chapter 41 is not restricted to those cases in which exemplary damages are awarded and "plainly extends more broadly" to any action for "damages." *Id.* at 920. The court further opined that Chapter 41's "text and relationship to section 52.006 reflect legislative intent to incorporate chapter 41's definition of 'compensatory damages' into section 52.006." *Id.*

However, the plain language of Chapter 41 reveals that the legislature enacted its provisions to create standards and procedures for the recovery of exemplary damages and define certain damages in order to limit exemplary damage awards. *See id.* §§ 41.001, 41.003, 41.008, 41.009 (Vernon Supp. 2010). There is no suggestion in Chapter 41 that any provision within it has any applicability to setting a good and sufficient supersedeas bond to suspend enforcement of a money judgment during the pendency of an appeal. Although the court in *Shook* saw evidence of a "relationship" between Chapter 41 and section 52.006, we, respectfully, see none. We conclude that the application of the defini-

tion of the term "compensatory damages" as used in Chapter 41 to the term as used in section 52.006 has created confusion in what should be a fairly straightforward matter. *See Shook,* 304 S.W.3d at 920. In short, the definitions employed in Chapter 41 are expressly prescribed to apply to that chapter only, not to section 52.006. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.001 (stating that definitions provided by section 41.001 apply "[i]n this chapter"); *see also Clearview Properties, L.P. v. Property Tex. SC One Corp.,* 228 S.W.3d 262, 263 (Tex.App.-Houston [14th Dist.] 2007, orig. proceeding [mand. denied]) (recognizing that definitions in Chapter 41 "do not expressly exclude attorney's fees" in calculating good and sufficient supersedeas bond).

Without stretching Chapter 41 beyond its prescribed application, there is no basis on which to interpret section 52.006's reference to "compensatory damages" as excluding the amount of recoverable attorney's fees awarded by the trial court to Patterson and Cudd from the amount of the security necessary to suspend enforcement of the trial court's money judgment. *See Clearview Properties, L.P.,* 228 S.W.3d at 263 (indicating that attorney's fees awarded in judgment could be "in the nature of costs or damages" and affirming trial court's order setting bond in amount sufficient to secure attorney's fees award).[5] Had the legislature intended to so alter the law, it could have expressly referred to "actual damages" in section 52.006, rather than the broader and more encompassing term "compensatory damages," which is

---

5. Fairways argues that *Clearview Properties* is distinguishable because, in that case, "the contract between the parties provided for attorney's fees to constitute compensation." *Clearview Properties, L.P. v. Property Tex. SC One Corp.,* 228 S.W.3d 262, 264 (Tex.App.-Houston [14th Dist.] 2007, orig. proceeding [mand. denied] ). The parties agreed at oral argument that there is no similar contractual provision here. Although we recognize this factual distinction, the court in *Clearview* cited this contractual provision as one of several reasons why the trial court properly set a supersedeas bond that included in its sum the award of attorney's fees.

more in accord with the basic purposes of securing a money judgment. *See Muniz,* 797 S.W.2d at 150. In light of section 52.006's reference to "compensatory damages," we conclude that a supersedeas bond that does not include in its sum the amount of recoverable attorney's fees is "patently ineffective" to secure a money judgment awarding such fees. *See Martinez,* 763 S.W.2d at 960. Accordingly, we hold that the trial court erred in denying Patterson and Cudd's motion to increase the amount of the supersedeas bond to include the trial court's award of recoverable attorney's fees in its money judgment.

### Prejudgment Interest

As with the attorney's fees issue, the parties appear to agree that prior to the enactment of section 52.006, the former version of rule 24 required security for the amount of prejudgment interest awarded in a money judgment. *See* Former TEX.R.APP. P. 24.2(a)(1); *Martinez,* 763 S.W.2d at 960 (indicating that bond covered prejudgment interest); *see also Gullo–Haas Toyota, Inc. v. Davidson, Eagleson & Co.,* 832 S.W.2d 418, 418 (Tex. App.-Houston [1st Dist] 1992, no writ) (implying that sufficient bond included prejudgment interest). The question, then, is whether section 52.006 changed the law. In interpreting section 52.006 to determine if prejudgment interest can be considered "compensatory damages awarded in the judgment," the court in *Shook* again considered the definitions of Chapter 41. After undertaking a lengthy analysis, the court concluded that "prejudgment interest awarded under common-law or equitable principles comes within [C]hapter 41's 'economic damages' definition because it is a form of damages intended to compensate for a form of economic or pecuniary loss recognized in Texas law." *Shook,* 304 S.W.3d at 927. Thus, the court held that the prejudgment interest awarded in that case constituted "compensatory damages awarded in the judgment" and such interest was required to be secured under section 52.006, although the court also appeared to recognize a distinction between certain types of prejudgment interest. *Id.* at 929.

■ Fairways argues that we should follow the distinction suggested in *Shook* between prejudgment interest awarded on breach of contract damages under common-law or equitable principles and prejudgment interest awarded on negligence damages under statutory authority. Fairways posits that prejudgment interest on a "negligence award for property damage" does not constitute "economic damages," and thus, cannot be characterized as compensatory damages under section 52.006. We find Fairways' arguments on the prejudgment interest issue unpersuasive.

■ As noted above, section 52.006 does not define the term "compensatory damages" in regard to calculating a good and sufficient supersedeas bond, and we find no support in the Texas Civil Practice and Remedies Code or the legislative history of Chapter 52 indicating that we should, in interpreting section 52.006, consult the definitions employed in Chapter 41 regarding exemplary damages. Although the legislature did not define "compensatory damages" in section 52.006, the compensatory nature of prejudgment interest is commonly understood and has been historically recognized by Texas courts. In *Cavnar v. Quality Control Parking, Inc.,* the Texas Supreme Court explained the need to award prejudgment interest to compensate a plaintiff:

If a judgment provides plaintiffs only the amount of damages sustained at the time of the incident, plaintiffs are not fully *compensated.* They have been denied the opportunity to invest and earn interest on the amount of damages be-

tween the time of the occurrence and the time of judgment.

696 S.W.2d 549, 552 (Tex.1985) (emphasis added). The supreme court has further acknowledged that "awarding prejudgment interest [is] necessary to fully compensate injured plaintiffs." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 529 (Tex.1998). We see no reason to depart from these generally accepted principles recognizing that prejudgment interest is awarded to compensate an injured plaintiff. We also see no principled reason to follow *Shook* and distinguish between prejudgment interest awarded on contract damages but not negligence damages. We conclude that a supersedeas bond that does not include in its sum the amount of prejudgment interest is "patently ineffective" to secure a money judgment awarding such interest.[6] *See Martinez*, 763 S.W.2d at 960. Accordingly, we hold that the trial court erred in denying Patterson and Cudd's motion to increase the amount of the supersedeas bond to include the trial court's award of prejudgment interest to Patterson on its negligence damages.

### Conclusion

We grant Patterson and Cudd's motion for enlargement of the supersedeas bond, and we order that the amount of the bond be increased to secure the amount of attorney's fees awarded to Patterson and Cudd as well as the amount of prejudgment interest awarded to Patterson on its negli-

gence damages.[7] Accordingly, we direct Fairways to file an amended supersedeas bond, with the amount of the total bond to be $1,984,718.86, plus post-judgment interest as described in the supplemental supersedeas bond. Should Fairways fail to post the amended supersedeas bond 20 days after the date of this order, the judgment may be enforced. *See* TEX.R.APP. P. 24.4(e).

---

6. We recognize that to the extent that any provision in Chapter 52 conflicts with the Texas Rules of Appellate Procedure, Chapter 52 would control. TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(a). However, we see no conflict between rule 24's requirement that a judgment debtor post a "good and sufficient bond" and the provisions of Chapter 52. Rather, the terms used in rule 24 and those used in Chapter 52 consistently reflect that the purpose of securing a money judgment is to protect a prevailing party's right to ulti-

mately recover its compensatory damages pending an appeal.

7. As noted above, Fairways has not argued that increasing the bond as requested by Patterson and Cudd would either exceed the caps provided in section 52.006(b) or cause it "substantial economic harm." TEX.R.APP. P. 24.2(a)(1), (b); *see also* TEX CIV PRAC. & REM. CODE ANN. § 52.006(b), (c).