

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00130-CV

JACKSON WALKER, LLP AND M. KEITH BRANYON AND JANE O. LINDSEY, INDIVIDUALLY AND AS THE FORMER CO-TRUSTEE OF THE LESEY B. KINSEL TRUST, AND ROBERT N. OLIVER, APPELLANTS

V.

VIRGINIA O. KINSEL, AS ATTORNEY-IN-FACT FOR J. FRANK KINSEL, FRANK KINSEL, JR. , INDIVIDUALLY, CAROLE K. EDWARDS, INDIVIDUALLY, AND CATHERINE K. COLLINS, INDIVIDUALLY, APPELLEES

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-232668-08, Ken Curry, Presiding

February 14, 2014

## MEMORANDUM OPINION ON MOTION FOR REVIEW OF SUPERSEDEAS BOND

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Pending before the court is the motion of Virginia O. Kinsel as attorney-in-fact for J. Frank Kinsel, J. Frank Kinsel Jr., Carole K. Edwards, and Catherine K. Collins (collectively the Kinsel Family) to review the supersedeas bonds filed by Keith Branyon, Jackson Walker, L.L.P., Jane Lindsey (Lindsey), and Bob Oliver (Oliver). Final

judgment was entered against Branyon, Jackson Walker, Lindsey and Oliver (the judgment debtors) in favor of the Kinsel Family. The latter were awarded compensatory damages of $3,709,600.92, and the judgment debtors were and are jointly and severally liable for its payment, according to the decree.

In effort to supersede the judgment's enforcement, the judgment debtors moved the trial court to designate the amount of supersedeas bond or like security each would need to post. Via order signed on October 4, 2013, that court set their respective amounts at 1) $100,000 for Lindsey, 2) $250,000 for Oliver, and 3) $2,359,600.92 for Jackson Walker and Branyon, jointly. It then ordered that $1,000,000 of the Lesey B. Kinsel Trust "shall be used towards the supersedeas bonds."[1] Combined, the amounts equaled $3,709,600.92. Bonds in such amounts were posted, but the Kinsel Family believes them to be deficient. We are asked to review their adequacy as well as the propriety of the order providing for them. We reverse and remand, in part, for an evidentiary hearing.

*Standard of Review*

The pertinent standard of review is one of abused discretion. *TransAmerican Nat. Gas Corp. v. Finkelstein*, 905 S.W.2d 412, 414 (Tex. App.—San Antonio 1995, pet. dism'd); *see* TEX. R. APP. P. 24.4(a)(5) (authorizing the appellate court to review the trial court's exercise of discretion under Texas Rule of Appellate Procedure 24.3(a)). A trial court abuses its discretion when its decision fails to comport with guiding principles or

---

[1] No one disputes that Lindsey is a residuary beneficiary of the Lesey B. Kinsel Trust. It appears that the value of her interest in the trust exceeds $3,000,000.00. Via its final judgment, the trial court imposed a constructive trust on Lindsey's interest ordering that it "be held by the Trustee of the Trust to satisfy, in whole or in part, Plaintiffs' judgment in this lawsuit."

rules or is otherwise arbitrary. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

*Amount Superseded*

The Kinsel Family initially complains that the trial court erred in simply ordering that the judgment debtors post bonds superseding only the compensatory damages awarded in the judgment.[2] We agree.

Statute provides that when a judgment is for money, the amount of security must equal the sum of 1) the amount of compensatory damages awarded in the judgment, 2) interest for the estimated duration of the appeal, and 3) costs awarded in the judgment. TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(a) (West 2008); *accord*, TEX. R. APP. P. 24.2(a) (stating that when the judgment is for money, the amount of the "bond, deposit, or security must equal the sum of compensatory damages awarded . . . , interest for the estimated duration of the appeal, and costs awarded. . . ."); *see also In re Nalle Plastics Family L.P.*, 406 S.W.3d 168, 170 (Tex. 2013). Yet, it cannot exceed the lesser of "50 percent of the judgment debtor's net worth . . . or $25 million." TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(b); TEX. R. APP. P. 24.2(a)(1)(A), (B). In providing that the amount of bonds or other security to post equal only $3,709,600.92, the trial court excluded from its calculation amounts covering the interest accruing during the duration of the appeal

---

[2] All litigants agreed below that both post-judgment interest accruing while the appeal pended and court costs should be added in the amount subject to being superseded. Why they were not included by the trial court is unknown. The parties further agreed that the court costs in question equaled $20,250 and that the applicable rate at which post-judgment interest was to accrue was five percent. They could not agree on the estimated time period of the appeal's duration, however. The judgment debtors suggested one year while the judgment creditors suggested one and a half years. Judgment was entered in December of 2012. More than a year has lapsed since that date. Furthermore, there have been delays in the filing of the appellate record and briefs. Given this, estimating the appeal's duration to be one year is unrealistic. This is especially so in view of counsel for some of the judgment debtors having represented to the trial court that irrespective of who wins before us, attempt will be made to appeal the matter to the Texas Supreme Court. Two years from the date of judgment is a more reasonable estimation.

3

and court costs. Omitting those items constitutes an abuse of discretion. *See Fairways Offshore Exploration, Inc. v. Patterson Servs., Inc.*, 355 S.W.3d 296, 304 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) *criticized on other grounds by In re Nalle Plastics Family L.P.,* 406 S.W.3d 168 (Tex. 2013) (stating that "a supersedeas bond that does not include in its sum the amount of prejudgment interest is 'patently ineffective' to secure a money judgment awarding such interest."); *National Convenience Stores, Inc. v. Martinez*, 763 S.W.2d 960 (Tex. App.—Houston [1st Dist.] 1989, no writ) (stating the same).

*Obligation of Each Judgment Debtor to Supersede the Entire Amount*

The Kinsel Family next contends that the trial court erred in permitting the judgment debtors to collectively post bonds totaling the amount of money damages awarded. Each allegedly was obligated to provide a bond or security equal to the compensatory damages awarded in the judgment plus interest and costs, unless statute or rule allowed for a lesser amount. We agree.

A like question was addressed in *Fortune v. McElhenney*, 645 S.W.2d 934 (Tex. App.—Austin 1983, no writ). There, the trial court entered judgment against the two defendants for $135,000 plus attorney's fees and interest. It also ordered that they were "'jointly and severally'" liable for payment of the sums. In effort to supersede enforcement of the decree pending appeal, each defendant filed one or more bonds approximating $112,000. The judgment creditors argued, however, that each judgment debtor was required to file supersedeas bonds equaling "the sum of the amount of the judgment, the estimated amount of interest which will probably accrue during the appeal and costs." *Id.* at 935. The reviewing court agreed. *Id.*

4

The judgment debtors at bar attempt to distinguish *Fortune* by contending that it was rendered before the 2003 changes wrought by the legislature in the way judgments are superseded. In recently considering those changes, the Texas Supreme Court viewed them as reflecting "'a new balance between the judgment creditor's right in the judgment and the dissipation of the judgment debtor's assets during the appeal against the judgment debtor's right to meaningful and easier access to appellate review.'" *In re Nalle Plastics Family L.P.*, 406 S.W.3d at 170, *quoting*, Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal after House Bill* 4, 46 S. TEX. L. REV. 1035, 1038 (2005). According to the judgment debtors at bar, this "new balance" somehow authorized the trial court here to relieve them of the obligation imposed in *Fortune*. Instead, the trial court allegedly had the discretion to order that each post bonds that in their aggregate could total the compensatory damages awarded in the judgment, interest pending appeal, and court costs. We do not interpret *Nalle* to afford such leeway.

In discussing the effect of the 2003 amendment, the *Nalle* court first noted that "a party [was historically required] to post security covering the *entire judgment*, regardless of amount, plus costs and interest for the estimated duration of the appeal." *In re Nalle Plastics Family L.P.*, 406 S.W.3d at 169-70 (emphasis added). The observation was taken from Elaine Carlson's law review article. Then, the court said:

> Judgment debtors must now post appeal bonds 'equal [to] the sum of . . . the amount of compensatory damages awarded in the judgment [,] . . . interest for  the estimated duration of the appeal [,] and . . . costs awarded in the judgment.' TEX. CIV. PRAC. & REM. CODE § 52.006(a). The amendment also capped security at  the  lesser  of  fifty  percent  of  the judgment debtor's net worth, or $25 million. *Id.* § 52.006(b)(2). A trial court must reduce the amount of security if a judgment debtor shows he is likely to  suffer  substantial  economic  harm—a  less  onerous  burden  than  the

5

previous standard, which required a showing both of irreparable harm to the debtor and that a lesser amount would not substantially impair a judgment creditor's ability to recover under the judgment after appellate remedies were exhausted.

*Id.* at 170. This verbiage indicates that the legislative changes in question involved 1) the character of the damages that an appellant need only supersede ("compensatory" as opposed to "the entire judgment"), 2) capping the amount of security a judgment debtor was obligated to provide (the lesser of $25 million or half the debtor's net worth), and 3) providing further relief to those who would suffer economic harm despite the caps. So, to some extent, the argument proffered by the judgment debtors here has conceptual support; judgment debtors were afforded more relief in 2003. However, the measure afforded was specific, as noted above. More importantly, it said nothing about vesting the trial court with unfettered discretion to do whatever it chose.

Additionally, we must presume that "the Legislature enacts a statute with knowledge of existing law." *Dugger v. Arredondo*, 408 S.W.3d 825, 835 (Tex. 2013). Pertinent case law existing before 2003 included the rule expressed in *Fortune*. "Consequently, we must presume that the legislature was aware of [that] holding . . . ." *John M. O'Quinn, PC v. Wood*, No. 12-08-00011-CV, 2009 WL 2367133, 2009 Tex. App. LEXIS 10081, at *19-20 (Tex. App.—Tyler June 10, 2009, pet. dism'd). And, the Legislature having said nothing about permitting judgment debtors to aggregate or combine their security, we must conclude that it left *Fortune* intact. *See id.* (applying *Fortune* and obligating each judgment debtor to be responsible for posting security or a bond up to the maximum of $25 million).

This result is appropriate given the nature of the liability imposed on judgment debtors held to be jointly and severally responsible via the decree. In such a

circumstance, each is saddled with the obligation of paying all the damages awarded. *Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 829-30 (5th Cir. 1992) (discussing the theory of joint and several liability and stating that under it "each and every one of several tortfeasors is liable for the full amount of an injured plaintiff's damages. In its purest application, this rule of 'joint and several liability' permits a plaintiff to obtain full legal redress from any defendant, even if that defendant's actions were not solely responsible for the plaintiff's injuries"). Moreover, the judgment creditor is free to seek its payment from whichever judgment debtor it chooses. *See Lone Star Salt Water Disposal Co. v. Railroad Comm'n of Texas*, 800 S.W.2d 924, 930 (Tex. App.--Austin 1990, no writ) (stating that where a party has suffered an indivisible harm caused by two or more joint tortfeasors, he may choose to proceed against only one of them). Logically then, each judgment debtor should be obligated to supersede the judgment by providing security in an amount equal to his respective liability imposed by the decree. *Fortune v. McElhenney*, 645 S.W.2d at 935 (involving a judgment wherein the defendants were found jointly and severally liable and stating that "[i]f judgment were reversed with respect to one appellant, or if appellees should be unable to collect one-half of the judgment from one appellant, the other appellant would nevertheless be liable for the entire judgment, interest, and costs").

In sum, the trial court abused its discretion in allowing the judgment debtors to aggregate or combine their bonds or security to satisfy the demands of Texas Rule of Appellate Procedure 24.2(a)(1) and § 52.006(a) of the Civil Practices and Remedies Code. However, this does not necessarily mean that multiple bonds must be posted with each securing the requisite amount. For instance, in *John M. O'Quinn, P.C.*, a joint

bond was used by the judgment debtors. *John M. O'Quinn*, *P.C. v. Wood*, 2009 WL 2367133, 2009 Tex. App. LEXIS 10081, at *20-21. Through it, each was obligated to pay the total amount of the bond.

*Sufficiency of the Evidence*

The Kinsel Family also questions the sufficiency of the evidence underlying the trial court's finding that Lindsey had a net worth of $578,365 while Oliver's net worth was $1,007,947.75. So too do they complain about the trial court's apparent, yet unstated, finding that both Lindsey and Oliver would suffer substantial economic harm if required to provide security equal to half their respective net worth. We agree in part.

As previously stated, the amount of security needed to supersede the enforcement of a judgment cannot exceed the lesser of $25 million or half the judgment debtor's net worth. TEX. R. APP. P. 24.2(a)(1)(A), (B). Net worth is defined as the difference between the judgment debtor's total assets and liabilities, as determined by generally accepted accounting principles. *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 840 (Tex. App.—Dallas 2006, pet. denied). And, the burden to prove net worth lies with the judgment debtor. *Id.* 24.2(c)(3). The very same rules of procedure also contemplate that the judgment debtor tender to the trial court clerk an affidavit both illustrating net worth and consisting of "detailed information concerning the debtor's assets and liabilities from which net worth can be ascertained." *Id.* 24.2(c)(1). Furthermore, that affidavit is considered prima facie evidence of net worth for purposes of establishing the amount of bond or security required to supersede the judgment's enforcement. *Id.* The judgment creditor may contest the debtor's claim and conduct discovery on the matter, though. *Id.* 24.2(c)(2). Should a contest be levied, then the

8

trial court must promptly hear it upon completion of discovery. *Id.* So too must the court "issue an order that states the debtor's net worth and states with particularity the factual basis for that determination." *Id.* 24.2(c)(3).

Here, the foregoing procedure was not followed. Instead of filing affidavits with the trial court clerk and permitting the Kinsel Family to contest them, the judgment debtors simply moved the trial court to fix a supersedeas bond amount. This apparently occurred in response to effort by the Kinsel Family to initiate a garnishment proceeding and conduct post-judgment discovery needed to enforce the judgment.[3]

Thereafter, the trial court convened a hearing whereat no one testified. Instead, the judgment debtors proffered argument consisting of various alternative ways for the court to determine the extent of their obligation under appellate Rule 24.2 and § 52.006 of the Civil Practice and Remedies Code. The Kinsel Family questioned the viability of those suggestions and informed the trial court that discovery from their opponents was outstanding. At that point, the trial court took the matter under advisement after informing the Kinsel Family that an evidentiary hearing was needed, "we'll make absolutely sure that you are provided the documents [sought via subpoena by the Kinsel Family] before the hearing."

No action was taken on the various alternatives offered by the judgment debtors. Instead, the trial court convened an evidentiary hearing whereat four witnesses appeared.[4] The first, a CPA named William T. Robinson, testified about the purported

---

[3] According to the argument of counsel for the judgment creditors, their opponents objected to the discovery served on them.

[4] Though the Kinsel Family again broached the matter of discovery at this hearing, they nevertheless participated in it. Additionally, we found nothing of record indicating that the trial court fulfilled its prior representation about having the judgment debtors provide the discovery sought by the judgment creditors.

net worth of both Oliver and Lindsey. He opined that Oliver had a net worth approximating $1,007,000. That sum purportedly represented half of Oliver's interest in the community estate belonging to him and his wife. So, dividing the community estate when calculating net worth was usual procedure, according to the witness, and the judgment creditors proffered no evidence contradicting that.

The same witness also opined that Lindsey's net worth was $578,365. Under cross-examination, though, Robinson admitted that his opinion was based upon a document provided him by Lindsey's daughter. The latter, also a CPA, testified, as well. She too testified that her mother's net worth was $578,365 and acknowledged that she was the one who calculated it. Also acknowledged was that she failed to include in her calculations the value of her mother's jewelry, if any, and of her mineral interests and of residual interest in the Lesey Kinsel trust.[5]

Another witness spoke about the cost of attorney's fees related to pursuing the appeal, while the fourth witness testified about supersedeas bonds and their cost. The latter individual who allegedly had some relationship with the insurance industry admitted that he had never written a supersedeas bond.

Of note, neither Branyon nor Jackson Walker proffered any evidence regarding their respective net worth. Nor did either suggest that the amount of compensatory damages, post judgment interest, and court costs at issue exceeded 50% of their respective net worth.

---

[5] Interestingly, Lindsey's legal counsel informed the trial court that it could be worth up to $1.9 million dollars. Others suggested, such as Branyon and Jackson Walker that the value of Lindsey's residual interest in the trust exceeded $3 million dollars. However, unsworn comments of legal counsel are not competent evidence. *See Goode v. Shoukfeh*, 915 S.W.2d 666, 671 (Tex. App.—Amarillo 1996), *affirmed*, 943 S.W.2d 441 (Tex.1997) (stating that counsel's unsworn comments are not evidence).

Thereafter, the trial court issued its order containing the following paragraph:

The Court further finds that: (1) pursuant to TEX. R. APP. P. 24.2(c)(3) and based on Exhibits 2 and 3 admitted into evidence at the hearing, the net worth of Jane O. Lindsey is $578,365 net of the amount in the constructive trust and the net worth of Robert N. Oliver is $1,007,947.75; (2) under TEX. CIV. PRAC. & REM. CODE § 52.006 and TEX. R. APP. P. 24.2(a)(1), a judgment debtor cannot be required to post more than fifty percent of his or her net worth to secure the judgment pending appeal; and (3) under TEX. R. APP. P. 24.2(b), the Court must lower the amount of security to be provided to an amount that will not cause the judgment debtor substantial economic harm.

It also specified each of the judgment debtors' supersedeas obligations. Again, those obligations were 1) $100,000 for Jane O. Lindsey, 2) $250,000 for Robert N. Oliver, and 3) $2,359,600.92 for Branyon and Jackson Walker, jointly. Why the trial court reduced the obligations of Lindsey and Oliver to less than half their respective net worths went unmentioned. Nor did the trial court explain how it derived the reduced amounts.

As previously mentioned, the trial court must "'issue an order that states the debtor's net worth and states with particularity the factual basis for that determination.'" *In re Smith*, 192 S.W.3d 564, 568 (Tex. 2006). The order at bar fails in that regard. It includes no commentary on the factual basis underlying any of its findings, much less those pertaining to the net worth of either Lindsey or Oliver. In omitting such information, the trial court abused its discretion. *Id.*

Also problematic is the conclusion that Lindsey's net worth was only $578,365. It is true that there appears of record evidence illustrating that the amount represented her net worth. So, it is questionable whether the finding lacks sufficient evidentiary support. Yet, it is also clear that the person who calculated or derived the number did so while failing to value various, and rather substantial, assets owned by Lindsey. Again, such assets included her residual interest in the Lesey Kinsel Trust and mineral interests.

11

That the residual interest in the Lesey Kinsel Trust had substantial value is manifested by the trial court's own decision. To reiterate, it ordered that $1 million from the trust be used as security to supersede the judgment's enforcement. Given that all seemed to agree that Lindsey's interest in the trust was much larger than that of any other trust beneficiary, one can only deduce that the difference between Lindsey's total assets and total liabilities was the amount found by the trial court. Simply put, the trial court did not consider the totality of Lindsey's assets as mandated by the law. That too evinces an instance of abused discretion.

The same cannot be said of Oliver's net worth, however. The testimony of his accountant was sufficient to support the valuation selected by the trial court. Furthermore, no evidence was presented to contradict the accountant's insinuation that it was a general practice to include only half the value of the marital estate when calculating the net worth of a spouse. And, that the entire marital estate may be subjected to payment of Oliver's obligation under the judgment, as the Kinsel Family suggests, the focus lies on the evaluation of net worth, not the extent of assets subject to levy.

Yet, our inquiry is not at an end. We must also comment upon the trial court's reduction of the supersedeas amount payable by Oliver. As previously mentioned, the amount due from him could be reduced if warranted by the risk of him suffering substantial economic harm. Indicia pertinent to assessing the presence of such harm include 1) the cost of acquiring the requisite supersedeas bond, 2) the availability of sufficient unencumbered assets to cover that cost, 3) the existence of other sources from which the judgment debtor could secure funds to acquire the bond, 4) the

12

judgment debtor's ability to borrow the requisite funds, 5) the impact upon the judgment debtor arising from the sale of assets sufficient to acquire the bond, and 6) the likelihood of the judgment debtor's insolvency or bankruptcy should assets be sold to acquire the bond. *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.,* 171 S.W.3d 905, 917 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The ability of the judgment debtor to service other debt, to maintain the daily operation of his household or business, to maintain his own existence, and to prosecute the appeal are also circumstances meriting consideration. Oliver made little effort to tender evidence touching upon these circumstances. Rather, it was suggested that he would incur taxes if required to sell his stocks. Yet, the amount of that supposed tax liability went uncalculated. So, that instance of purported harm hardly constituted evidence justifying a reduction in the bond amount. The same is true of the evidence about the cost of posting a bond. The witness who testified about it suggested that cash in the full amount of the bond would be required; later he acknowledged that assets such as realty could be used in lieu of posting cash. The evidence illustrates that Oliver owned an interest in a vacation home, which interest had a value exceeding half his net worth. And, the potential impact arising from the use of that interest to obtain a bond went undeveloped. Nor did Oliver proffer evidence illustrating that he was unable to liquidate sufficient assets to derive a cash sum equal to half his net worth. Again, it was simply suggested that doing so would incur some unknown tax liability. And, while evidence was presented about the cost of prosecuting the appeal through the Supreme Court, that sum ($100,000) alone does not equate to the $250,000 reduction made by the trial court. Thus, even if we view the evidence of record in a light most favorable to the trial court's decision, *see*

*Aquaduct, L.L.C. v. McElhenie,* 116 S.W.3d 438, 444 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (describing this to be an aspect of the standard of review pertinent to assessing the sufficiency of the evidence underlying the trial court's findings), it fails to support the rather extensive reduction derived by the trial court.

In sum, we reverse the trial court's supersedeas order. We also order that to supersede enforcement of the judgment, Branyon must post a bond or provide a cash deposit or other security equal to $3,709,600.92, court costs of $20,250, and post-judgment interest on those sums at the rate of five percent per annum for two years. We also order that to supersede enforcement of the judgment, Jackson Walker must post a bond or provide a cash deposit or other security equal to $3,709,600.92, court costs of $20,250, and post-judgment interest on those sums at the rate of five percent per annum for two years. Branyon and Jackson Walker may satisfy this obligation by posting a joint bond under which each is obligated to pay the aforementioned amounts. Except to the extent it relates to Branyon and Jackson Walker, the matter of superseding the judgment's enforcement is remanded to the trial court for the taking of evidence and the entry of findings of fact per Texas Rule of Appellate Procedure 24.4(d). We further order the trial court to permit the Kinsel Family to engage in relevant discovery as permitted by Texas Rule of Appellate Procedure 24.2(c)(2). Our resolution of this dispute relieves us from having to address the request for injunctive relief prohibiting the disposition of assets; proper supersedeas bond provides adequate protection.

Per Curiam